FRUIT DISPATCH CO. *v.* RUSSO.

1. SALES—FRAUDULENT PURCHASE—EXEMPTIONS.
In an action to recover the value of goods fraudulently purchased, the question of exemptions is in no way involved, and it is error to instruct the jury in relation thereto.

2. SAME—WAIVER OF FRAUD.
Plaintiff sold to defendants a car load of fruit, and drew a 10 days' sight draft for the price, $720. Defendants accepted the draft, but without intention of paying it, and it was dishonored when due. Plaintiff's agent, on learning of the nonpayment, agreed with defendants that they might send him at once a draft for $500, and remit the balance on receiving another car load of fruit, which they had ordered. The draft was never sent, and no more fruit was furnished. *Held,* not to show a waiver of the fraud.

3. SAME—EVIDENCE—DIRECTED VERDICT.
In an action to recover the value of goods fraudulently purchased, evidence that defendants, at the same time, purchased from different dealers on credit twice as much merchandise as they could legitimately handle, which they sold for cash, without paying any bills, and that they told plaintiff's agent that they had done so, and that they intended to pay no one except plaintiff, when uncontradicted, entitles plaintiff to a directed verdict.

Error to Kalamazoo; Buck, J. Submitted October 4, 1900. Decided December 4, 1900.

Case by the Fruit Dispatch Company against Guiseppi Russo and Sam Spalla, copartners as G. Russo & Company, to recover the value of goods fraudulently purchased. From a judgment for defendants, plaintiff brings error. Reversed.

*Howard, Roos & Howard,* for appellant.

*Frost & Jackson (Frank E. Knappen,* of counsel), for appellees.

LONG, J.    This suit was commenced by *capias* to recover the value of a car load of bananas alleged to have been fraudulently purchased by defendants of plaintiff through a Mr. Forbush, its Michigan manager and agent, on May 20, 1899. The plea was the general issue. The case was tried before a jury, and verdict of no cause of action rendered. The defendants introduced no testimony, but they were both present in court during the entire trial, and were not sworn.

The testimony is all returned in the record, and was in no way contradicted or controverted by the defendants. It appears that on May 20, 1899, defendants bought of plaintiff, through Mr. Forbush, a car load of bananas at the agreed price of $720, and on the same day defendants were drawn upon by a 10 days' sight draft for that amount, which draft was accepted, but which defendants failed to pay, and never have paid; that while in business the defendants could handle legitimately, at the outside limit, only four car loads of bananas from May 12 to May 31, 1899, yet during that time they succeeded in getting on credit ten car loads of different parties, and disposed of the same without paying anything on the purchase price; that during that time they purchased, received, and disposed of fruit to the amount of $5,667.18, for which they never paid anything; that Mr. Forbush, whose business office is in Detroit, on learning of the nonpayment of the draft for the car load sold by him, immediately went to Kalamazoo, where defendants were doing business, and

had an interview with them. This was on June 6th, and he says defendants took him into the cellar at their place of business to have a conversation with him, as they said it would be more private there. Mr. Forbush testifies:

"In the conversation I had with Russo, Spalla being present, Russo said: 'Others have done this thing, and I do not see why I cannot. People should have cash to buy goods, and for cash can always get what goods they want. * * * We will have the cash. We have got the goods, we have sold the goods, and we have got the cash.' He said further that he had bought goods from a large number of importers and sellers, and that the amount was not large to them, but the sum total to himself was considerable; that they would never feel the amount of their individual credit to him; and that he had scattered his indebtedness around through as many sellers and importers as he was able to. They said they had bought all the goods they could buy during the season; that they bought just as many goods as they could buy, and had disposed of them, and had not paid for them. They said they would not pay for them; that they did not have to. They said they did not intend to pay a cent for them except to me; that others had bought a large quantity of goods, and made money by not paying for them; that they did not see any reason why they could not do the same. They said, 'When this thing gets settled, we can buy for cash, and will make enough cash out of this to buy with.'"

There was also testimony offered by the plaintiff tending to show that several claims had been received at Kalamazoo, for collection, by different attorneys, aggregating $3,500. Mr. J. W. Osborn, an attorney, who had a claim for collection for bananas sold to defendants, testified that he had a conversation with Russo, in which he said their firm did not owe more than $3,000, but declined to let him see their books, and said that the money and goods were all gone, but refused to tell him to whom they had paid the money. The witness testified that at this time they had in the store only 75 to 100 bunches of bananas and a small quantity of cabbage; that the entire stock was not worth to exceed $300.

Defendants' counsel call attention to some testimony of Mr. Forbush which they claim has a tendency to show that Mr. Forbush was only giving his judgment upon these matters, and that he was not in a position to judge of the amount of goods which defendants could handle in a given time.   He testified:

"I said something to them about having had a larger quantity of fruit than they could use in their business, and they said they got rid of it; they found places for it; that they had connections in Elkhart, in Battle Creek, and surrounding towns, and that they were able to use a larger amount of fruit than usual.   But, to my knowledge, they had the same connections years ago.   *   *   * To the best of my knowledge, they would use in that time about a car load of fruit every ten days.   I know of their having bought of others.   *   *   *   I possibly shipped them two car loads each month."

The court charged the jury that:

"Unless the plaintiff shows by a preponderance of the evidence, to your satisfaction, the fraud charged, the plaintiff cannot recover."

Also:

"If you find that the plaintiff, or its agent, having full knowledge of the fraud, saw fit to overlook it, and to base no claim upon it, but made another and an entirely different arrangement, and one incompatible with any claim of fraud, then that would be a waiver of the fraud."

The court also instructed the jury that the defendants were entitled to an exemption of $500 in their business, and that:

"I do not understand, however, that the plaintiff makes any claim that there was any fraud in disposing of exempt property, so that you will have no occasion to consider that proposition, except as possibly it might have an influence one way or the other as bearing upon the question of fraud."

It is claimed by the plaintiff that each of these instructions was erroneous.

There was nothing in the case whatever having any

reference to exemptions, and we think the instruction on this question might have been very misleading to the jury.

On the question of waiver, it appeared that, when Mr. Forbush was at Kalamazoo, the defendants told him that they would send a draft to him for $500 that same night to apply on the claim, and would send the $220 balance on receiving another car load of fruit, which they had ordered; that they never sent the $500 draft as agreed, and no more fruit was furnished. We think the court was in error in his instruction to the jury in permitting them to pass upon the question whether there was a waiver of fraud. There is no testimony showing such waiver.

We think the court, under the testimony given by the plaintiff, should have directed a verdict in its favor, as the cross-examination of Mr. Forbush cannot be construed as claimed by defendants' counsel. The court cannot properly submit to the jury facts of which the testimony is all one way. *Hunt* v. *Order of Chosen Friends,* 64 Mich. 671 (31 N. W. 576). See *Folkerts* v. *Standish,* 55 Mich. 463 (21 N. W. 891); *Township of Medina* v. *Perkins,* 48 Mich. 67 (11 N. W. 810). The defendants were in court, and failed to take the stand as witnesses in their own behalf to contradict any part of the testimony given by plaintiff's witnesses. If the facts testified to by Forbush were not true, the defendants were there to disprove them. The facts, therefore, must be taken as true, and the court should have so instructed the jury. We think the plaintiff made out a case showing that the defendants purchased these goods with the intent on their part at the time of the purchase not to pay for them.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.