THE HON. SYDNEY SANNER, ⎭

---

SHOUDY, RESPONDENT, *v.* REESER ET AL., APPELLANTS.

(No. 3,354.)

(Submitted February 10, 1914. Decided March 7, 1914.)

[140 Pac. 000.]

*Fraud — Evidence — Sufficiency—Verdict—Court may Direct, When—Erroneous Instruction.*

Fraud—Evidence—Sufficiency.
  1. Evidence in an action for damages for fraud charged by plaintiff to have been practiced upon him in the sale of land, the defendant, acting in collusion with a civil engineer who had been employed by plaintiff to survey the land, falsely representing to him that the tract contained a much larger acreage suitable for fruit growing than was actually embraced in it, *held* sufficient to sustain a finding in plaintiff's favor.

Same—Verdict—Court may Direct, When.
  2. Where the facts in an action for fraud are not controverted and furnish the basis of but one inference, *i. e.*, that the defendant is guilty of the fraud alleged, the court may infer the fraud as a matter of law and direct a verdict in favor of plaintiff.

Same—Erroneous Instruction.
  3. In the absence of active participation by defendant in the false representations made to plaintiff by the latter's agent, defendant could not have been held accountable even though he had knowledge of the agent's wrongdoing; hence an instruction that plaintiff should recover

(579)

from defendant if the real facts had been suppressed by the agent with the knowledge of defendant was erroneous.

[As to liability of vendor of realty for false representation innocently made, see note in Ann. Cas. 1913C, 63. As to opinions on question of law by party to contract for sale of land as sufficient basis to support charge of fraud, see note in Ann. Cas. 1913B, 1143.]

*Appeal from District Court, Ravalli County; R. Lee McCulloch, Judge.*

ACTION by J. E. Shoudy against F. H. and Julia K. Reeser. From a judgment for plaintiff and an order denying their motion for a new trial, defendants appeal. Affirmed.

*Mr. F. C. Webster* and *M. E. C. Kurtz,* for Appellants, submitted a brief and argued the cause orally.

*Mr. J. D. Taylor* and *Mr. L. O. Johnson,* for Respondent, submitted a brief; *Mr. Taylor* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for fraud practiced by the defendants upon the plaintiff in the sale to him of 120 acres of land situate in Ravalli county. Defendants are husband and wife. The fraud alleged is that defendants knowingly and falsely represented to the plaintiff that the area sold to him included sixty-five to seventy acres of bench land, whereas it included only thirty-five acres; that defendants further, by collusion with the agents of plaintiff, suppressed this fact, and that by reason of the false representations so made, upon which he relied, and by reason of the suppression of the fact by defendants by collusion with plaintiff's agents whereby he was prevented from discovering the truth, plaintiff suffered damage in the sum of $2,550. The defendants, admitting that they sold the land to the plaintiff, denied generally all the other allegations of the complaint. The plaintiff had verdict and judgment for $2,000. Defendants have appealed from the judgment and order denying their motion for a new trial. They allege insufficiency of the evidence to justify the verdict and error in the instructions. The insufficiency of

the evidence was questioned both by motion for nonsuit and on motion for a new trial, and error is assigned upon the action of the court on both motions. Whether we consider the case as made by plaintiff's evidence alone, however, or the whole case as it was submitted to the jury, we think the verdict should not be disturbed.

[1] The negotiations for the purchase of the land were opened by the plaintiff in November of the year 1909. Having ascertained that defendant F. H. Reeser owned the land, plaintiff sought him out at his place of business. This defendant was then engaged in conducting a real estate business in Hamilton, Ravalli county, and had been so engaged for two years. Plaintiff made inquiry of him as to the character and price of the land, signifying a wish to buy it. A day or two later both defendants accompanied the plaintiff, drove to the land to permit the latter to make an inspection of it. Defendant Julia K. Reeser remained in the conveyance and took no part in the inspection; nor did she thereafter take part in the negotiations. The inspection was confined exclusively to a body of bench land on an elevation of from fifty to seventy feet above the general level, and all the negotiations touching bench land referred exclusively to this. At that time the plaintiff, being without experience in estimating acreage, inquired what area there was of bench land suitable for raising fruit. Defendant F. H. Reeser (hereafter designated by his surname only) said that there were from sixty-nine to seventy acres. The price demanded was $10,000. Within a few days plaintiff saw Reeser again and told him that he would take the land at $9,000 if Reeser would guarantee that there were sixty acres on the bench. Reeser declined to make the guaranty and advised plaintiff to have a survey made. He agreed, however, to accept the price offered, provided it should be paid in cash. It was then agreed that should the negotiations result in a sale, the plaintiff should pay the purchase price partly in cash, and the balance in deferred payments, the last to be made on or before May 1, 1910. Thereupon plaintiff employed one Hawkins, a professional engineer, to make a survey to ascertain definitely the area of bench

land, and arranged to have Hawkins report the result to him in New York, the place of his residence. He deposited $100 in the First National Bank at Hamilton, together with a written option from Reeser, with instructions to the bank to pay the money to Reeser and forward the option to himself in case Hawkins' survey, of the result of which the latter was to inform the bank, disclosed that the area of bench land was approximately sixty-eight acres. Plaintiff then returned to New York after instructing his attorney at Hamilton to prepare the contract of sale for signature by defendants in case he secured the option, and finally determined to exercise it by purchasing the property. Hawkins was to forward to plaintiff, with his report, a blue-print map of his survey, showing the area of the bench. Thereafter and prior to the execution of the contract of sale the following correspondence passed between the plaintiff and Hawkins and Reeser:

"Hamilton, Mont., Dec. 23, 1909.

"Mr. J. Edwin Shoudy,

"27 Williams St., New York:

"Dear Sir: I have completed the survey of the land that you wish to buy from Mr. Reeser, and reported to the First National Bank that it was all that you wished, and I told them to pay over the $500. (This amount was $100.) It took me longer than I expected to complete the job and it will cost you a little more than I thought it would at first. I am enclosing my bill for the remainder.     Yours very truly,

"O. J. HAWKINS."

"Hamilton, Mont., Jany. ——, 1910.

"Mr. J. E. Shoudy,

"27 Williams St.

"My Dear Shoudy: Your letter of Dec. 30th, 1909, at hand. Mr. Hawkins told the bank and also me that there were over 70 acres in the bench and I asked him to advise you, which he said he would.     Yours truly,

"F. H. REESER."

"Hamilton, Montana, Jan. 12th, 1910.

"Edwin Shoudy,

   "New York City.

"Sir: I received your telegram and was sorry to learn that you didn't receive blue-prints, and tracing. I am inking in the detail and sending that to you. If you just want 65 acres of orchard land I would advise you to buy, because that is one of the prettiest benches that there is in the valley. I am sorry that I have kept you waiting unknowingly so long. I trust that you heard from the abstract company. It won't be necessary to make another survey to get your title examined. Hoping this is satisfactory.         · Truly yours,

"O. J. HAWKINS."

On January 21 defendant Reeser wrote plaintiff as follows:

"I have just returned from St. Paul * * * . It would have been better had you looked into these matters when you were here. Mr. Hawkins told me that you wanted him to find out if there was more than 70 acres in the bench and he said when he found there was he stopped chaining."

The letter by Reeser under date of January —— was apparently in reply to the following, written by plaintiff about December 1, 1909.

"Mr. F. H. Reeser,

   "Hamilton, Mont.

"My dear Mr. Reeser: I have received the option forwarded to me by the First National Bank but have not yet received a report from Mr. Hawkins. If he reports approximately 68 acres in the tract of which we spoke I shall almost certainly exercise my option.         Yours very truly,

"J. E. SHOUDY."

On January 24 Hawkins telegraphed plaintiff:

"Hamilton, Jan. 24, 1910.

"To Edwin J. Shoudy,

   "No. 27 Williams St., New York City.

"There is at least 65 acres in the upper bench.

"O. J. HAWKINS."

Hawkins did not furnish the map. Relying upon the information received from him as to the result of the survey, however,

the plaintiff determined to exercise the option, and thereupon his attorney prepared the contract of sale in accordance with the instructions already given. This was executed and delivered on February 1. It provided for the payment of $9,000, of which $2,100, including the $100 paid for the option, was in cash; $3,000 to be paid on or before March 15, and $3,900 on or before May 1, both of these sums to bear interest from the date of the contract at the rate of ten per cent per annum. The formal conveyance was deposited in the First National Bank, where the deferred payments were to be made, to be delivered to plaintiff upon the deposit by him of the last payment. The payments were duly made and the conveyance delivered on May 1, 1910. Though the plaintiff took immediate possession, he did not discover any discrepancy in the area of the bench until about the middle of June. This he did by means of a survey which he had made by one Oertli, a professional engineer of experience, the county surveyor of Ravalli county. He then ascertained that the area of bench land did not exceed thirty-five acres. This engineer testified it would be impossible for a surveyor to find sixty-five acres on the bench unless he made a mistake, and that he could not do this "through his eye or instrument." Other than the high bench there was no land of that character within the area sold to plaintiff. Defendant Reeser had bought the land from one Cooper in February, 1909. Prior to that time Cooper had listed it with Reeser for sale; when he did this he told Reeser that there were about forty acres of bench land. Reeser, called as a witness for plaintiff, testified that in accordance with the request from plaintiff, he saw Hawkins and asked him to make his report. He stated that he had been informed by plaintiff before he went to New York that the latter had arranged with Hawkins to make the survey, but did not know when Hawkins made it.

The foregoing is the substance of the evidence introduced by the plaintiff. The defendants both testified in their own behalf. Reeser corroborated the statements of the plaintiff as to the course of the negotiations resulting in the sale. He failed to

deny, however, that he represented to the plaintiff that there were sixty-nine or seventy acres in the bench land, or that he knew that Hawkins' statement to the plaintiff was not true. He did not remember the statement made to him by Cooper but he did not deny that it was made or that it was true. He denied that he had any knowledge of the survey by Hawkins or had any communication with him other than when he communicated with him upon request of plaintiff in order to hasten the report of the survey, or as to the character of the report the latter was to make to the plaintiff, except such as he ascertained from Hawkins at that time. He denied that he had induced or attempted to induce Hawkins to make a false report. The defendant Julia K. Reeser stated that she knew Hawkins but had never suggested to him to make a false report to the plaintiff. Incidentally the fact was elicited from her that Hawkins had at various times been employed by her husband to make maps for him in connection with his real estate transactions. One Blakeslee, an engineer called by the defendants, testified that he had made a survey for the defendants in June, 1910, and found 69.04 acres of what he classed as bench land in the entire tract, but only 43.03 in the upper bench. Hawkins was not called as a witness; nor was his deposition offered, though the place of his residence was known to defendants. It does not appear from the testimony of any witness why Blakeslee was employed to make the survey at that time, unless it be explained by the fact that about the time the survey was made, the plaintiff discovered the discrepancy in the area of bench land and thereupon negotiations were entered into between him and Reeser with a view of adjusting the controversy arising out of it. These negotiations were pending until a short time prior to the beginning of this action.

It will be noted that the testimony introduced by the defendants does not seriously controvert the case as made by the plaintiff, or tend to rebut or destroy the inferences to be drawn from the facts and circumstances established by it. The uncontroverted facts, with the legitimate inferences therefrom, are: That plaintiff desired to purchase the land because it included the

bench which he deemed especially suited for fruit growing; that he did not care to purchase unless the. area was approximately sixty-eight acres; that he was not a judge of acreage, which Reeser knew; that Reeser represented to him that the area of the bench was sixty-nine or seventy acres; that Reeser knew that this was not true; that he knew that the plaintiff, in order to inform himself, had employed Hawkins to make a survey; that he knew that plaintiff, being about to return to New York, was dependent upon the integrity and loyalty of Hawkins; that Hawkins' report was false, and, knowing that the sale would not be consummated if plaintiff was informed of the discrepancy in acreage, Reeser told Hawkins, as stated in his letter written in January, 1910, to report that there were seventy acres when in truth there were not more than half that number; and that he knew when he signed the contract and afterward when he accepted plaintiff's money, that he was doing it upon the basis of false information furnished by Hawkins, or his concealment of the truth, whereas if Hawkins had made an honest report, plaintiff would not have taken and paid for the option, or thereafter consummated the purchase. When we read together Hawkins' letters and telegram to the plaintiff, the conclusion becomes irresistible not only that he deliberately betrayed his unsuspecting employer, but also that he had a purpose in doing so. Hesitating at first to make a false statement as to the result of his work, though advising the purchase, he gave no definite information, thus indicating an indisposition to betray his employer. Finally in the telegram of January 24—the only communication making a definite statement—he deliberately made the false report: "There is at least 65 acres in the upper bench." Why did he encourage the plaintiff to make the purchase? Why did he refrain from telling the truth as he knew it at the beginning? Why did he finally make a deliberately false statement as to the number of acres in the bench? There can be but one explanation, *viz.,* that in some way he became interested in having the sale consummated; for it cannot be conceived that the average man will make a deliberately false statement unless he is

prompted to do so by some motive. Whether he received a consideration for betraying the plaintiff does not appear. His conduct may be explained by his friendly relation with Reeser growing out of his former employment in a professional way by the latter. But what his inducement was is not important to inquire. So far as he is concerned, it is sufficient that he not only suppressed the truth, but made a misrepresentation of the fact which he had been employed to ascertain and communicate. That Reeser was in collusion with Hawkins is a legitimate inference from the fact that, knowing that Hawkins' communication to the bank was false and that he intended to make the same report to the plaintiff, Reeser nevertheless told him to make it. The letters written by Reeser to plaintiff—particularly the one without date, evidently written in reply to inquiries by plaintiff—do not furnish the basis for any other inference, unless it be that Reeser, though he knew that Hawkins' statement as to the acreage was false, made use of it to lead plaintiff to take up the option and finally make the purchase. The result is the same whether we indulge the one inference or the other; for the fact is established that even if Reeser was not in collusion with Hawkins, he told Hawkins to forward information which he as well as Hawkins knew to be false. Whether we regard this communication as a deliberate misrepresentation or suppression of a fact that he was under the circumstances bound to disclose, he practiced a palpable fraud upon the plaintiff. (Rev. Codes, sec. 4978; *Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac. 950.) Since the plaintiff had employed Hawkins to make the survey in order to gain the information he desired, defendant might have remained silent with perfect safety. Nothing else appearing, he was not called on to make any disclosure whatever. [2] While "actual fraud is always a question of fact" (Rev. Codes, sec. 4980), and while it is usually the province of the jury to draw the proper inferences from the facts and circumstances proven, under the evidence as presented here the court might properly have assumed the guilt of Reeser as a matter of law and submitted to the jury the question of damages only; for it dis-

closes without substantial conflict all the elements necessary to make a case of fraud, *viz.:* (1) That defendant made a representation intending that plaintiff should act upon it; (2) that it was false; (3) that plaintiff believed and relied on it; and (4) that he acted upon it to his damage (*Power & Bro.* v. *Turner, supra*); and this is true whether we indulge the inference that Reeser was in collusion with Hawkins or not. Where the facts are not controverted and furnish the basis for but the one inference—that, the defendant is guilty of the fraud alleged—the court may infer the fraud as a matter of law and direct a verdict as in any other case. (*Fruit Dispatch Co.* v. *Russo,* 125 Mich. 306, 84 N. W. 308; *Reynolds* v. *Munch,* 91 Minn. 380, 98 N. W. 187; *Bender* v. *Kingman,* 62 Neb. 469, 87 N. W. 142; 20 Cyc. 123.)

The contention that the evidence is insufficient to establish fraud is therefore wholly without merit.

The court submitted the case to the jury on the theory that the fraud which the evidence tended to establish was the result of a conspiracy between Hawkins and Reeser, whereby they suppressed the information which the plaintiff employed Hawkins to procure for him. As we have seen, the evidence was sufficient to warrant a recovery either on this theory or upon the theory that Reeser voluntarily confirmed Hawkins' false statement and then availed himself of the result. The instructions were correctly formulated on the theory adopted, except in one [3] paragraph in which the jury were told, in substance, that the plaintiff would be entitled to recover if it was established by a preponderance of the evidence that the facts as to the area of bench land had been suppressed by Hawkins and this had been done "through collusion or knowledge of the defendants." This was clearly erroneous; for, as has already been said, if Reeser had taken no part in misleading the plaintiff, he could not have been held accountable for Hawkins' misconduct even though he had knowledge of it. Hawkins was the agent of the plaintiff and his fidelity to his employer was of no concern to Reeser. Since, however, the evidence conclusively establishes his parti-

cipation in Hawkins' wrongdoing, the error in the instruction could not have wrought prejudice.

Under the evidence, defendant Julia K. Reeser did not participate in the negotiations, nor did she take any part in the transaction further than to join in the execution of the contract of sale and the formal conveyance. She has, however, made joint cause with her husband throughout, and no suggestion has been made in her behalf that the judgment ought not to be allowed to stand as to her. We have, therefore, not felt required to notice this feature of the case or to grant her relief which she does not demand.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

## ON MOTION FOR REHEARING.

(Submitted March 30, 1914. Decided April 22, 1914.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

In a petition for a rehearing in this case, counsel for defendants call attention to the fact that in the opinion of the court it is erroneously stated that the Blakeslee survey was made in June, 1910, whereas it is shown by the record to have been made in June, 1912. We are glad to make the correction and also to eliminate from the opinion any possible inference unfavorable to the defendants, based upon the fact that the survey was made at the time stated. We think it apparent, however, that the comment made in this connection sufficiently indicates that the court did not deem the date of the survey or the fact that it had been made, as of special import. We are also glad to correct another erroneous statement made in the opinion to which our attention is called. In the same connection it is stated: "Hawkins was not called as witness; nor was his deposition offered, though the place of his residence was known to defendants." Defendant

Reeser stated that he did not know where Hawkins was; Julia K. Reeser was not questioned as to his whereabouts. The last statement in the sentence quoted is therefore not warranted by the record, though it appears from the statements of another witness that Hawkins at the time of the trial was probably residing in Calgary, Canada. Nevertheless, upon the theory that defendant Reeser was not in collusion with Hawkins, in making to the plaintiff the representations which he did, as shown by the various communications sent to him, it was of the utmost importance to Reeser either to have Hawkins present as a witness or to show that an unsuccessful effort had been made to secure his testimony. The court and jury were, in the absence of such showing, justified in concluding that if he had been present, his testimony would not have been favorable to the defendants. In view of the convincing character of the evidence in other respects, however, we do not deem this item of very material import. We think that in the light of the surrounding circumstances, the written correspondence quoted in the opinion shows conclusively that Reeser was a party to Hawkins' misconduct and that he was properly held to account for the fraud charged.

There is nothing in the petition calling for further comment. A rehearing is accordingly denied.

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.