JOHN L. SPAULDING, ADMR., ET AL. *v.* THE MUTUAL LIFE INSUR-
ANCE COMPANY OF NEW YORK.

May Term, 1919.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 7, 1920.

*Life Insurance Policy—False Answers in Application—Directed
Verdict—When Intent to Deceive Inferred—Consideration
of Plaintiff's Exceptions to Admission of Evidence on Re-
viewing Defendant's Motion for Verdict—Right of Revoca-
tion as to Beneficiaries Reserved in Policy—Effect on Bene-
ficiaries—Fraud—Evidence—Declarations of Insured—Test
of Falsity of Answers in Application—Reargument—When
Verdict Should Be Directed—Presumption of Innocence on
Weight of Proof.*

1.  In an action on a life insurance policy, defended on the ground
    that the insured's statements in the application for insurance
    with reference to illnesses or diseases that he had had since
    childhood were false and fraudulent, where the undisputed evi-
    dence shows that such statements were false to the knowledge
    of the insured and were made with intent to deceive, the de-
    fendant's motion for a directed verdict should have been
    granted.

---

NOTE.—When this case was originally argued it was assigned to
Mr. Justice Haselton.  Upon his retirement from the bench, the case,
being ordered for reargument, was assigned to Mr. Justice Taylor.

2. The statements of the insured being knowingly false, the law will infer an intent to deceive, in the absence of explanation.

3. Where declarations of the insured were admitted in evidence subject to plaintiff's objection and exception, the Court, on reviewing defendant's motion for a directed verdict which was overruled, may properly inquire as to the admissibility of such declarations.

4. Where the insured in a life insurance policy reserves the right of revocation, as to beneficiaries, giving him full control of the policy and the fund during his lifetime, the beneficiaries named in the policy do not have a vested interest therein until the death of the insured.

5. In a suit on such a policy for the benefit of the beneficiaries, declarations of the insured tending to show falsity of material statements made by him in the application for insurance are admissible.

6. In determining whether an insured truthfully answered certain questions in his application for insurance relative to previous illnesses or diseases he had had, the test is not whether he thought that he was suffering from some particular trouble at the time he consulted a certain doctor prior to the application, but whether his answers were true to the best of his knowledge and belief at the time they were given.

7. A reargument will not be granted for the purpose of presenting new questions; but if the Court made a material mistake of law in deciding questions of law, a rehearing may be had.

8. In every jury case, where fair minded men could not honestly differ as to the conclusion to be drawn from the undisputed facts, it is the duty of the court to decide the question as one of law, and to direct the jury to return the necessary verdict.

9. This rule prevails in cases where the issue is one of fraud.

10. This rule is not affected by the presumption of innocence, except that it requires stronger proof in such cases than would otherwise be required.

ACTION OF CONTRACT on a life insurance policy. Answer: A denial of some of the facts alleged in the declaration; a special statement in defence that the contract never took effect as a binding contract of insurance by reason of certain unfulfilled conditions precedent therein contained; and further special statements in defence of fraudulent representations, breach of warranty,

and concealment by the insured of and respecting facts material to the risk in his application for insurance. Trial by jury at the March Term, 1916, Washington County, *Butler,* J., presiding. Verdict and judgment for the plaintiffs. The defendant excepted. The opinion states the case.

*Theriault & Hunt* for the defendant.

*John W. Gordon* (*J. W. Rowell* on Motion for Reargument) for the plaintiffs.

TAYLOR, J. This is an action of assumpsit on a contract of insurance on the life of Orvie M. Jones, deceased. Before trial the declaration was amended by striking out the name of the administrator, and the cause proceeded on behalf of the beneficiaries, who were the widow and the children of the deceased. Trial was by jury, with verdict and judgment for the plaintiffs for the amount due under the terms of the policy. The case is here on exceptions by the defendant.

The application for insurance was made August 14, 1914, the insured was examined by the defendant's medical examiner the next day, and the policy was delivered and the first premium paid August 29, 1914. The policy antedated the application by four days, but the reason for this is here immaterial. The second premium was paid August 10, 1915, and the insured died August 29, 1915. The undisputed evidence was to the effect that he died of cancer of the stomach.

The application for the policy is expressly made a part of the contract between the parties. In the application the insured was asked what illnesses or diseases he had had since childhood. He named indigestion; and, in answer to inquiries as to the number of attacks, their dates, duration, severity, and results, he answered one in May, 1914, of a few days' duration, mild in character, resulting in complete recovery. He stated that the attack was due to eating a hearty supper when very tired. He was asked to state every physician or practitioner whom he had consulted or who had prescribed for or treated him in the previous five years, and answered by naming Dr. F. M. McGuire of Montpelier, whom he said he had consulted in May, 1914. He gave the nature of the complaint as indigestion. He affirmed in answer to questions that he had stated in the application all ill-

nesses or diseases that he had had since childhood, and every physician or practitioner .consulted during the previous five years. He signed a statement that all his answers and statements in the application were true and were made as an inducement to the company to issue the proposed policy. The policy provides that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The policy was not to take effect unless and until the first premium was paid and the policy delivered during the continuance of the applicant in good health, except in circumstances not here material.

The claim of the defendant was that the policy was of no effect as a binding contract of insurance, for the reason that when the first premium was paid and the policy delivered the insured was not in good health, and for the further reason that it was rendered void by certain fraudulent representations of the insured made in the application for insurance. It was the theory of the defendant that at the time of the application the insured had an ulcer of the stomach, which later became malignant and cancerous. The defendant tendered and paid into court $489.84, being the amount of the premiums paid, aggregating $449.85, together with interest thereon and the taxable costs of the plaintiffs then accrued. The case was tried and submitted to the jury upon the theory that the plaintiffs were entitled, in any event, to a verdict for this amount.

At the close of the evidence the defendant moved for a directed verdict. Five grounds of the motion were specified. The first presented the claim that on the undisputed evidence the insured was not in good health at the time the policy was delivered and the first premium thereon was paid. The remaining grounds are directed to the claim, stated generally, that on the undisputed evidence the insured was guilty of fraud in the application, voiding the policy issued thereon. The court overruled the motion, and the defendant was allowed an exception as to each ground.

The point is made that the second ground of the motion, which was that the insured "made false and untrue answers in the statements to the medical examiner respecting matters material to the risk," was too general to afford a basis of error, in that no specific statement is here pointed out. But the other grounds of the motion to the same effect amplify this general

ground and are sufficiently specific to raise the questions argued. The issue raised by the defendant's answer and proof was clearly defined, *viz.*, that the insured's statements with reference to illnesses or diseases that he had had since childhood were false and fraudulent. Considering the motion as a whole, especially in the light of the pleadings and evidence, plaintiffs' criticism is without just foundation.

The burden being upon the defendant to make out its claim that the insured was guilty of fraud voiding the policy, the precise question presented by that phase of the motion is whether on all the evidence there was any room for opposing inferences. The defendant's evidence strongly tended to show that the insured had been suffering from gastric ulcer for several years before the policy issued and that the trouble persisted, with periods of quiescence, finally developing into the malignant condition that caused his death. The fair tendency of the medical testimony was all to this effect. Plaintiffs rely upon the fact that the defendant's medical examiner passed the insured as an excellent risk; but it fairly appeared from all the evidence that at the time of his examination the trouble could be detected only through the subjective symptoms—the statements of the insured as to his past and present condition. For this reason the most that the plaintiffs can claim for the examination and the medical examiner's testimony is that the insured then appeared to be in good health. Certain lay witnesses gave evidence to the same effect. Conceding, though not deciding, that the evidence of appearance of good health was sufficient to make the fact of good health at the time the policy was delivered a question for the jury, it by no means disposes of the defendant's claim as to fraudulent representations.

The evidence was uncontradicted that the insured had been suffering from repeated attacks of a stomach trouble of sufficient severity to require medical advice and treatment for a period of five to seven years. He had consulted and been treated for the trouble by several physicians other than Dr. McGuire during the five years preceding the application for the policy. The recurrence of the difficulty had come to be spoken of by him as ''one of those attacks of indigestion.'' In February, 1913, he consulted a Dr. Gannett in Boston and probably then, if not before, learned the real nature of the trouble. He consulted Dr. McGuire some time in the spring of 1914, and was under his

·treatment during the following summer.. He gave Dr. McGuire .a history of his case, from which the doctor diagnosed the trouble .as gastric ulcer and prescribed a course of treatment therefor. He told Dr. McGuire that he had been under treatment for distress in the region of the stomach for some time. The treatment prescribed consisted of regulating the diet, giving food that would be less irritating to a sore surface, and medicine to diminish the over acid condition of the stomach usually present with a gastric ulcer. When asked if he told Mr. Jones what his ·diagnosis was, Dr. McGuire replied, "I think I did." There can · be no doubt that insured was thus informed. Not only is it highly probable this was so, in view of the nature of the trouble .and the necessity for intelligent cooperation of the patient to render the treatment effective, but Mrs. Jones testified that the insured told her that Dr. McGuire said it might be an ulcer. Any possible doubt is removed by the testimony of at least three reputable physicians whom the insured subsequently consulted, to the effect that insured told them, as part of the history of his ·case, that he had been treated for gastric ulcer. Dr. Campbell testified that he said in November, 1914, that he had been treated for gastric ulcer—had been under the care of a number of doctors at different times within the previous year or two—naming .among others Dr. McGuire, Dr. Maynard, and Dr. Gannett. Dr. Mayo testified that on an occasion during the session of the Legislature of 1915 insured told him that he had previously been treated for ulcer of the stomach—said he had suffered from stomach trouble for a long time. Dr. Grimes testified that he was called to attend the insured in March, 1915, and was told by him that he had previously had a gastric ulcer. In answer to the question: "How long previous?" witness replied, "As I remember four or five years—or six years, as I remember it." There was no attempt to contradict this evidence, and the credibility of the witnesses was unimpeached.

From these facts there can be but one conclusion. When the insured stated in his application, referring specifically to the occasion of his treatment by Dr. McGuire some three months before, in effect, that the only illness or disease he had had since childhood was a mild case of indigestion, due to eating a hearty meal when overtired, resulting in complete recovery within a few days, he was unmistakably guilty of a deliberate falsehood. As to previous attacks, it is not a sufficient answer

to say that they were illnesses of a character not in contemplation of the parties. They were in character like the illness disclosed, and it was a fraud upon the defendant to conceal the fact that the attacks had frequently recurred over a long space of time. Nor is it a sufficient answer to say that the insured did not *know* that the trouble was gastric ulcer. Plaintiffs seek to avoid the effect of this statement by pointing out that Dr. McGuire admitted in cross-examination the uncertainty of the diagnosis of gastric ulcer, that he only found *symptoms* of that trouble, and that if a layman did not know what the trouble was he might call it indigestion. The fault of this argument is that the insured knew what the diagnosis of his physician was but gave an answer calculated to conceal the probable nature of the trouble. While he may not have had positive knowledge that he was then suffering from gastric ulcer, good·faith required that in answering this question he should disclose what his physician had diagnosed his trouble to be. An applicant for insurance is bound to exercise toward the company the same good faith that he may justly demand of it. The question called for matters within the insured's knowledge such as he should reasonably have supposed to be material to the inquiry. Instead of the frank statement which good faith required he gave an answer well calculated to deceive the defendant.

[1, 2] On the evidence the question of fraudulent intent was not for the jury. The undisputed evidence makes a case of actual fraud; but, if that were not so, the intent to deceive would, in the circumstances, be inferred. By his answers the insured assumed to have knowledge respecting matters such as the defendant might reasonably suppose to be within his knowledge. The answers being false, the law will infer an intent to deceive, in the absence of explanation. *Fitzgerald* v. *Metropolitan Life Ins. Co.*, 90 Vt. 291, 98 Atl. 498; *Stevens* v. *Blood*, 90 Vt. 81, 96 Atl. 697. No question is made but that the representation in question was, as a matter of law, material to the risk, and the defendant's claim that the policy was rendered voidable by the false representations of the insured is in other respects conclusively established. There is no escape from the conclusion that on the evidence defendant's motion should have been sustained.

[3] Plaintiffs contend that the declarations of the insured, which were admitted against their objection and under exception,

were inadmissible and that the defendant is not entitled to the benefit thereof on this motion.    But being in evidence they were necessarily for consideration.    Though plaintiffs' exceptions are not here, we may properly inquire as to the admissibility of the declarations, for it would be futile to reverse the decision on the motion on the strength of incompetent evidence.

[4]    It was said in *Fitzgerald* v. *Metropolitan Life Ins. Co.*, 90 Vt. 291, 304, 98 Atl. 498, that the authorities are not agreed as to the admissibility of evidence of this character when the insurance is not for the benefit of the insured.    There the suit was on a policy payable to the plaintiff without right of revocation; but here the insured reserved the right of revocation, giving him full control of the policy and the fund during his lifetime.    In such case the beneficiaries did not have a vested interest in the policy until the death of the insured.    The rule is well established that where a person procures insurance upon his life for the benefit of another, the policy and the money to become due thereunder belong to the beneficiary named therein, and the insured has no power to change the interest of the beneficiary unless a power of revocation or modification is reserved by the terms of the policy.    *Ferguson* v. *Phoenix Mut. Life Ins. Co.*, 84 Vt. 350, 79 Atl. 997, 35 L. R. A. (N. S.) 844; *Atkins* v. *Atkins*, 70 Vt. 565, 41 Atl. 503.    But where the contract so provides, the beneficiary may be changed at the instance of the insured, in which case no vested right exists in the beneficiary, in the absence of facts or circumstances tending to establish an equitable interest in the proceeds of the policy.    *Modern Woodmen of America* v. *Headle,* 88 Vt. 37, 46, 90 Atl. 893, L. R. A. 1915, A, 580; *Waring* v. *Wilcox,* 8 Cal. App. 317, 96 Pac. 910.

[5]    It is doubtless true that by weight of authority the insured's admissions or declarations, not so made as to be part of the *res gestae,* are inadmissible against the beneficiary having a vested interest in the policy, at least as proof of the facts stated. 14 R. C. L. 1438 and cases there digested.    The rule is apparently based upon the ground that the contract is between the insurer and the beneficiary, and the insured is not a party to the suit.    It seems that even in such case the evidence should be held admissible to show the insured's knowledge of his condition, and that it was fraudulently represented in the application.    Prof. Wigmore says that in actions on life insurance policies, where the deceased's misrepresentations as to his health are in issue,

his statements as to a prior illness would be inadmissible under the hearsay exception to prove that illness, and might not also be receivable as a party's admissions; and yet, if the fact of the illness were otherwise evidenced, the deceased's statements might be receivable as circumstantial evidence of his knowledge of it. 1 Wig. on Ev. § 266.   See *Metropolitan Life Ins. Co.* v. *O'Grady,* 115 Va. 830, 80 S. E. 743; *Haughton* v. *Ætna Life Ins. Co.,* 165 Ind. 32, 73 N. E. 592, 74 N. E. 613; *Swift* v. *Mass. Mut. Life Ins. Co.,* 63 N. Y. 186, 20 A. R. 522; *Dilleber* v. *Home Life Ins. Co.,* 69 N. Y. 256, 25 A. R. 182; *McGowan* v. *Supreme Court, I. O. F.,* 104 Wis. 173, 80 N. W. 603; *Union Cen. Life Ins. Co.* v. *Pollard,* 94 Va. 146, 26 S. E. 421, 36 L. R. A. 271, 64 A. S. R. 715.

But the general rule of exclusion is based upon the assumption that the beneficiary has a vested interest in the policy from the time of issue, while, as we have seen in the case at bar, the plaintiffs had no such interest.   Their and the insured's relations under this policy were similar to those of the parties under the certificate of insurance of a benefit society, giving the member power to change the beneficiary.   See *Modern Woodmen of America* v. *Headle, supra,* and cases there cited.   It is said in 14 R. C. L. 1439, that there is no doubt that the admissions and declarations of the insured are admissible against his beneficiary in the case of a benefit society, the reason assigned being that the beneficiary has no vested right.

It would seem that the view that the insured's declarations are admissible against the beneficiary, under a policy reserving the right to change the beneficiary, is logically correct.   The insured is the party with whom the contract is made, and remains so until his death.   Consequently up to that time he is the only party in interest.   See Bacon on Ben. Soc., etc., § 460.   It is merely the application of the general rule that declarations of deceased persons against their interest or right are admissible against those who claim in their interest or right.   *In re Bugbee's Will,* 92 Vt. 175, 182, 102 Atl. 484.   Such is the express holding in some very well considered cases.   *Conn. Mut. Life Ins. Co.* v. *Hillmon,* 188 U. S. 208, 47 L. ed. 446, 23 Sup. Ct. 294; *Langdeau* v. *John Hancock Mut. Life Ins. Co.,* 194 Mass. 26, 80 N. E. 452, 18 L. R. A. (N. S.) 1190; *Rosman* v. *Travelers' Ins. Co.,* 127 Md. 689, 96 Atl. 875, Ann. Cas. 1918 C, 1047; *Brown* v. *Mystic Workers, etc.,* 151 Ill. App. 517; *Turner* v.

*Modern Woodmen of America,* 186 Ill. App. 404; *Tuite* v. *Supreme Forest Woodman Circle,* 193 Mo. App. 619, 187 S. W. 137. Other courts hold such evidence admissible without stating the reason, except inferentially. *McManus* v. *Peerless Casualty Co.,* 114 Me. 98, 95 Atl. 510; *McEwen* v. *N. Y. Life Ins. Co.,* 23 Cal. App. 694, 139 Pac. 242; *Fidelity Life Ins. Co.* v. *Winn,* 96 Tenn. 224, 33 S. W. 1045.

We deem it unnecessary to undertake an extended review of the authorities. The question has been very carefully briefed and our attention called to a long list of pertinent cases. We come to the conclusion upon an examination of the cases that the distinction made between the rule applicable when the policy reserves to the insured the right of revocation, and when it does not, harmonizes the apparent disagreement of a large percentage of the cases. Formerly in the case of ordinary life insurance policies the insured could not change the beneficiary, while in case of benefit certificates the certificate or the by-laws of the society gave him that right. In the former the beneficiary had a vested interest, and in the latter he did not. As a result of this, it came to be a rule generally recognized that the admissions or declarations of the insured in the former case were not admissible against the beneficiary, while in the latter case they were. Later—in recent years quite commonly—policies of ordinary life insurance have come to be written, reserving to the insured the right to change the beneficiary, to that extent giving such policies the same effect as benefit certificates. With this change has come the change in the rule, generally, though not always, recognized.

We hold that the evidence of the insured's declarations was properly received, and is for consideration in disposing of defendant's motion here. The result is the defendant's exception to the action of the court in overruling its motion is sustained. Plaintiffs may have judgment for the sum conceded at the trial below. The case was heard on numerous other exceptions, as well as on a petition for a new trial on the ground of newly discovered evidence, but the disposition of the case on defendant's motion renders it unnecessary to consider the questions thus presented.

*Judgment reversed, and judgment for the plaintiffs to recover $489.84 without costs. Let the defendant recover its costs.*

## ON MOTION FOR REARGUMENT.

After the foregoing opinion was handed down counsel for the plaintiffs had leave to file a motion for reargument, pending which the entry of judgment has been withheld.

The reasons assigned in support of the motion are for the most part a reiteration of the claims made in the plaintiffs' several briefs, and have already been fully examined by the Court. So far as these claims have not been specifically treated in the opinion, it is enough to say that they are not found to be pertinent to the question on which the case is turned. The burden of plaintiffs' complaint is that the evidence was conflicting as to whether the insured was suffering from gastric ulcer before or at the time of making the application for the policy. But as shown in the opinion, that is not a controlling factor in the case. To bar plaintiffs' action it was only necessary for the defendant to show that one or more of certain specified representations of the insured were false and fraudulent. As already sufficiently appears, the answers given by the insured to the medical examiner respecting his previous condition of health, on the most favorable view of the evidence, were not true according to his best information and reasonable ground of belief.

[6] It is said that the Court has misconstrued the import of the questions asked the insured; that the inquiry as to what illnesses, etc., he had had since childhood merely called for his own idea of what diseases he had had; and that the insured might well have understood that the "complaint" referred to in the succeeding question called for the complaint and the particulars thereof that he made to the doctor. But such is not the reasonable interpretation of the questions. Within certain limits they call for the history of the applicant's health. The questions were not answered truthfully, and the insured could not have thought that they were, by giving what he may have at some time believed his condition to be and withholding what he had learned with reference thereto from his trusted medical adviser. The true test is not whether he thought that he was suffering from this trouble or that, when he consulted Dr. McGuire in May, 1914, but whether his answers were true to the best of his knowledge and belief at the time they were given. In view of what appears without conflict in the evidence, especially

the insured's statement to Dr. Campbell that he was treated for gastric ulcer by Dr. McGuire, there can be but one conclusion: The insured's answers were false in material matters and, if fraudulent, would avoid the policy.

In reaching the conclusion that the evidence as to the fraudulent character of the representations admits of but one result, the Court has relied upon certain declarations of the insured to the effect that he had previously been treated for gastric ulcer. Plaintiffs' counsel criticize the testimony of the physicians who gave this evidence, quoting therefrom at some length in an attempt to show that it was contradictory and that no great reliance could be placed upon it. After all that is said, the fact remains as stated in the opinion. No attempt was made to contradict the testimony of the witnesses respecting these declarations, and their credibility was unimpeached. The declarations are therefore in the case and entitled to be considered. There is no foundation for the criticism that their testimony on this subject is weak and entitled to little reliance Their statements as to what the insured said are clear and positive. Their only uncertainty was as to the time to which the insured referred; but as to this their testimony left no doubt that he referred to a time previous to the application for insurance. Assuming to quote from the transcript, it is said that the substance of Dr. Campbell's testimony is contained in the answer, "I could not say positively what he said at the time." What Dr. Campbell in fact said was this: After stating in positive terms the insured's declaration that he had been treated for gastric ulcer, and that he had been under the care of a number of doctors at different times, naming them, he said, in answer to a question relating to time, "I couldn't say positively that he stated the time." This is too manifest a perversion of the testimony to be permitted to pass unnoticed.

Counsel challenge as unwarranted by the evidence the statement that the insured probably learned the real nature of the trouble on his visit to Dr. Gannett, if not before. It would doubtless be more accurate to say that the insured very likely then, if not before, learned the probable nature of the trouble. This conclusion would seem to be justified by the insured's declaration in effect that he had been treated for gastric ulcer by Dr. Gannett, taken in connection with the evidence as to his having consulted the doctor when in Boston. It should be

needless to say that the deposition of Dr. Gannett, not being in evidence, was not considered.

[7]   Among the reasons assigned why a reargument should be ordered is the suggestion that the presumption against fraud is a piece of evidence, and that it is for the jury, and not for the court, to weigh the presumption against the other evidence in the case.   This point was not made on the hearing, and the rule is well settled that a reargument will not be granted for the purpose of affording an opportunity to present new questions. *Houghton* v. *Cook,* 91 Vt. 197, 100 Atl. 115; *State* v. *Monte,* 90 Vt. 566, 569, 99 Atl. 264; *Cunningham* v. *Blanchard,* 85 Vt. 494, 501, 83 Atl. 469; *Howard* v. *Village of West Randolph,* 82 Vt. 260, 72 Atl. 1076; *Van Dyke* v. *Cole,* 81 Vt. 379, 399, 70 Atl. 593, 1103.

Plaintiffs' counsel attempt to avoid the effect of this rule by saying, in substance, that they had no occasion to invoke the presumption, as the defendant relied in its brief solely upon the claim of legal fraud.   However, the defendant did rely upon the claim of fraud, both in fact and in law, though special emphasis was laid upon the latter.   There was occasion and ample opportunity for raising the point at .the hearing, and under the general rule it cannot be made the basis of a reargument.

It is now urged that, notwithstanding this rule, if a material mistake of law is made by the Court in deciding questions of law, a rehearing may be had.   The general rule undoubtedly has such a limitation.   *Cunningham* v. *Blanchard, supra; Van Dyke* v. *Cole, supra.*   It should be, and we have no doubt is, the desire of courts to rectify any mistakes into which they may fall, when they may do so without contravening public policy and without working further injustice.   *Guilmont's Admr.* v. *Central Vermont Ry. Co.,* 82 Vt. 266, 268, 73 Atl. 580.   No mere pride of opinion will be suffered to stand in the way of accomplishing this result.   But here no such mistake is pointed out.

Counsel treat the omission to refer to the presumption as conclusive that it has been disregarded to the prejudice of the plaintiffs.   But not so, as we shall endeavor to make clear, though in doing so we may seem to prolong this opinion unnecessarily.   In the original opinion we held that the undisputed evidence made a case of actual fraud; but that, if that were not so, the intent to deceive would, in the circumstances, be

inferred. The latter holding is not challenged by the motion. It amounts to a holding that, at least, the evidence conclusively established a case of legal fraud. Plaintiffs' counsel admit in one of their briefs in support of the motion that if the case was one of legal fraud "there would be no presumption of innocence to prevail against it."

But assuming that we are dealing with a case of fraud in fact, and that the presumption has the force of evidence in favor of the plaintiffs, still the result would be the same. The defence to the plaintiffs' claim was predicated upon the alleged fraud of the insured in making certain specified representations, any one of which, if established, would avoid the policy. The motion for a directed verdict challenged the right of the plaintiffs to go to the jury as the evidence stood on those issues. In determining on review whether the trial court erred in overruling the motion it is necessary to consider whether it discharged its legal duty when called upon to rule upon such a motion.

[8] In every case before the evidence is left to the jury there is, or may be, a preliminary question for the court whether there is evidence upon which a jury can properly return a verdict for a given party. Ordinarily the question is whether the party who has the burden of establishing a certain issue has produced sufficient evidence to justify its submission to the jury. Less frequently, but by no means rarely, the evidence supporting the issue is so conclusive that it becomes a question whether there is any room for a different conclusion, that is to say, whether or not fair-minded men could honestly differ as to the conclusion to be drawn from the undisputed facts. In the absence of rational doubt, it is the duty of the court to decide the question as one of law, and instruct the jury accordingly. The rule is recognized in *Vinton* v. *Schwab*, 32 Vt. 612, and *St. Johnsbury* v. *Thompson*, 59 Vt. 300, 311, 9 Atl. 571, 59 A. R. 731, and was applied to the issue of contributory negligence in *Worthington* v. *Central Vermont Ry. Co.*, 64 Vt. 107, 23 Atl. 590, 15 L. R. A. 326, and *Carter* v. *Central Vermont Ry. Co.*, 72 Vt. 190, 47 Atl. 797. See also *Wilder* v. *Wheeldon*, 56 Vt. 344.

A satisfactory test, applicable to both cases alike, is whether it would be the duty of the court on motion to set aside the verdict, if in favor of the party having the burden in the one case, or against him in the other. Instead of going through the useless

form of submitting the issue to the jury and correcting error, if made, by setting aside the verdict, the court should in the first instance direct the jury to return the verdict that the evidence compels. This subject is treated at length in Wigmore on Evidence, §§ 2487-2495, and Chamberlayne on Evidence, §§ 390-399. It is there made clear upon excellent authority that the rule applies equally to plaintiff and defendant. Thus the latter, relying upon an affirmative defence, and so having the burden of establishing it, may make out his case with the measure of certainty that entitles him to a ruling of the court against the plaintiff, taking the case from the jury.

The Supreme Court of the United States has said that trial by jury, in the primary and usual sense of the term at common law and in the American Constitutions, is not merely a trial by a jury of twelve men before an officer invested with authority to cause them to be summoned and impaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. The Court remarked that this proposition has been so generally admitted and so seldom contested that there has been little occasion for its distinct assertion. *Capital Traction Co.* v. *Hof,* 174 U. S. 13, 43 L. ed. 873, 19 Sup. Ct. 580. Concerning the same matter it is said in *Patton* v. *Texas & Pacific Ry. Co.,* 179 U. S. 658, 45 L. ed. 361, 21 Sup. Ct. 275: "The judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who in our jurisprudence stands charged with full responsibility." The same Court has repeatedly announced that it is well settled that the court may withdraw the case from the jury altogether, and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, where the evidence is undisputed or is of such conclusive character that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict returned in opposition to it; and that it would be an idle proceeding to submit the evidence to the jury when they could justly find only

in one way.   *Delaware, etc., R. Co.* v. *Converse,* 139 U. S. 469, 35 L. ed. 213, 11 Sup. Ct. 569; *Patton* v. *Texas & Pacific Ry. Co.,* 179 U. S. 658, 45 L. ed. 361, 21 Sup. Ct. 275, and cases there cited.   The power of the court to set aside a verdict in a civil case and the power of the court to direct a verdict in such a case are evidently identical in nature and in substance.   *Gunn* v. *Union R. Co.,* 27 R. I. 320, 62 Atl. 118, 2 L. R. A. (N. S.) 362.

[9]   It is essential to the due administration of justice that the jury should reason correctly.   It is the unquestioned right of the party to insist that this reasoning be exercised, and it becomes the duty of the court so to supervise the trial as to assure this result.   Among other things, upon occasion, it is its duty to rule as to what is or is not rationally possible for the jury to do. In exercising this function the court does not decide questions of fact but is ruling on a matter of law.   1 Cham. on Evidence, § 394.   It is a rule of general application that, though the facts are undisputed, when fair minded and unprejudiced men may reasonably differ in the conclusion to be drawn therefrom, the question is one of fact for the jury.   But when the facts are such that reasonable men can fairly draw but one conclusion, the court may, and on motion should, withdraw the case from the jury.   The rule is the same where the issue is one of fraud. *Peoples'.Sav. Bk.* v. *Bates,* 120 U. S. 556, 30 L. ed. 754, 7 Sup. Ct. 679; *Pettibone* v. *Stevens,* 15 Conn. 19, 38 A. D. 57; *Sturtevant* v. *Ballard,* 9 Johns. (N. Y.) 337, 6 A. D. 281; *Jennings* v. *Carter,* 2 Wend. (N. Y.) 446, 20 A. D. 635; *Weaver* v. *Lapsley,* 42 Ala. 601, 94 A. D. 671; *Iler* v. *Jennings,* 93 S. C. 158, 76 S. E. 276; 12 R. C. L. 445; note 1 Ann. Cas. 446.

[10]   Nor is the rule affected by the presumption of innocence, except that it requires stronger proof than would be required if no such presumption existed.   Bump on Fraud. Con. 604; Bigelow on Fraud. 123.   To sustain the issue only such evidence is required as will overcome in the mind of the tribunal the legal presumption of innocence and beget a belief of the truth of the allegation of fraud.   Bigelow on Fraud, 138. In a matter involving honesty the court will proceed with caution, giving the presumption its legitimate force, and the evidence must be so clear and cogent as to leave the mind well satisfied.   See *Gillespie* v. *Fulton Oil & Gas Co.,* 236 Ill. 188, 86 N. E. 219; *Shinn* v. *Shinn,* 91 Ill. 477.   But when the evidence is of such conclusive character that fair minded and unprej-

adiced men, despite the presumption, can justly come to but one conclusion, it is the manifest duty of the court to direct the jury to return a verdict accordingly. The following are some of the decisions where the rule has been applied by courts that regard the presumption of innocence as in the nature of evidence: *Bender* v. *Kingman,* 64 Neb. 766, 90 N. W. 886; *Wilcox* v. *Perkins' County,* 70 Neb. 139, 97 N. W. 236, 113 A. S. R. 779; *Fruit Despatch Co.* v. *Russo,* 125 Mich. 306, 84 N. W. 308; *Diddea* v. *Page,* 199 Ill. App. 47; *Shoudy* v. *Rieser,* 48 Mont. 579, 142 Pac. 205; *Jessup* v. *Johnston,* 48 N. C. 335, 67 A. D. 243; *Noble* v. *Fox,* 35 Okla. 70, 128 Pac. 102, 43 L. R. A. (N. S.) 933. The principle that questions relating to fraud may be disposed of by the court without the aid of the jury when conclusively established was recognized by this Court in *Belka* v. *Allen,* 82 Vt. 456, 462, 74 Atl. 91.

Upon a review of the evidence bearing upon the decisive question in the case, examined in the light of the various suggestions of counsel in support of their motion, we remain satisfied with the result reached in the original opinion. The motion calls attention to nothing that would justify the ordering of a reargument.

*Motion overruled.*