POWERS AND ANOTHER *v.* THE NORTH EASTERN MUTUAL
LIFE ASSOCIATION.

*Contract of Insurance.*

In debt on a life insurance policy, it appeared that by the written application therefor,
the assured was asked, among other things, whether he then or ever had disease of
the heart, to which he answered, no; that the application contained an express stipu-
lation that the application should form the basis of the contract, and that any mis-
representation or fraudulent or untrue answer should avoid the contract; and that
the policy purported to have been issued in consideration of the representations and
agreements made in the application, and upon certain conditions and agreements,
one of which was to the effect, that if the answers or declarations made in the ap-
plication should be found in any respect untrue, the policy should be void. The
jury found that the assured had a disease of the heart at the time he made his
application, but did not know it, and might not reasonably have been expected to
know it. *Held*, that as the assured thus agreed that defendant should not assume
the risk from that disease, and as the jury had found that he had it at the time he
made his application, defendant should have judgment.

DEBT on a life insurance policy. Plea, the general issue, and
trial by jury, March Term, 1877, WHEELER, J., presiding.

Plaintiff introduced the policy declared upon, issued June 1,
1874, by which the life of Daniel N. Powers was assured for the
benefit of Amantha M. and William D. Powers, the plaintiffs.
It was conceded by defendant that the assured died on January 1,
1876 ; that proof of his death was duly received and filed by de-
fendant on February 7 ; that the sum collected to apply on said
policy, in case defendant should be considered liable thereon, was
$1,256.24 ; and that the same was payable ninety days from the
date of the filing of the proof of death.

Defendant introduced the original written application of the
assured dated April 24, 1873, and also an additional applica-
tion dated April 11, 1874, upon which applications the policy
was issued.

In the application the applicant was asked whether he " now
or ever had * * * disease of the heart," to which he answered
" No." Following that and the other questions and answers, and
over the signature of the applicant, was the following stipulation :

" And it is expressly stipulated and agreed that the above application and this declaration shall form the basis of the contract between the applicant and the North Eastern Mutual Life Association of Brattleboro, Vermont, and that if any misrepresentation, or fraudulent or untrue answers have been made, that then, in either event, this contract shall become null and void." The policy contained the following provision : " In consideration of the representations and agreements made in the application therefor, and the sum, &c., paid, &c., * * * the said association does hereby issue this policy to Daniel N. Powers, of, &c., with the following agreements: Upon the death of the said Daniel N. Powers, he having conformed to all the conditions thereof," &c., then followed an agreement for payment to the plaintiffs. The policy further provided : " This policy is issued by the association and accepted by the assured, upon the following conditions and agreements." The material part of paragraph V. of these conditions and agreements was as follows : " Or in case the answers or declarations made in the application for this certificate should be found in any respect untrue, then this membership shall cease, and this policy, with all its agreements and guaranties, shall be null and void, and in every such case, this association shall not be liable."

Defendant also introduced evidence tending to prove, that at the time the first application was made, the assured had a disease of the heart, by reason of which he had fainting spells of a few minutes' duration, which increased in virulence from that time to the time of his death, from that disease. But it appeared that the witnesses who observed him in those spells said nothing to him about them. Dr. Charles L. Allen, a witness for the defendant, testified that he was United States examiner of pensioners, and had been for twelve years ; that in that capacity he examined the assured on September 4, 1867, and at intervals of two years thereafter, down to and including September 4, 1875, except in 1873, when the examination was made September 30 ; that at the first examination he found the valve of the heart so diseased and the heart so enlarged as partially to disable the assured, and so reported to the pension office; that witness might have told him

what ailed him, but did not know that he did; and that the assured told witness that the injury for which he drew a pension was caused by a kick from a horse while in the army. He also testified that between the years 1867 and 1875, the assured had his pension increased from $4 to $18 a month, on account of the increased virulence of said disease.

The plaintiff's evidence tended to prove that the assured was a strong, well man, generally, and had no disease of the heart. The examining physician who examined the assured for insurance, testified that he had doctored in his family eight or ten years, and took him to be a sound, strong man; and that on that examination he did not discover that he had heart disease, but that the examination was a very hurried one, and made without removing the clothing.

The court submitted six questions to the jury, charging them as to the fifth, which was as to whether the assured had received any serious personal injury according to common understanding, that if they found that he had, they should answer that question in the affirmative, otherwise, in the negative. To that portion of the charge the defendant excepted. The jury found specially that the assured had a disease of the heart at the time the application was made, and also at the time it was refiled, but that he did not know it, and might not reasonably have been expected to know it; and that he had received no serious personal injury, according to common understanding, and did not at the time he was examined inform the examining surgeon that he had. Defendant moved for judgment on the verdict; but the court rendered judgment thereon for the plaintiff for $1,256.24 and costs; to which defendant excepted.

*J. M. Tyler, W. G. Veazey, and E. J. Phelps,* for the defendant.

The policy embodied the application, and together, they formed the contract. The policy expressly makes the declarations and agreements of the application the consideration of the policy, and makes the policy conditional upon the truth of the answers and declarations of the application. There was, therefore, a warranty

that the answers were true.   *Miles* v. *Conn. Mut. Life Ins. Co.*
3 Gray, 580 ; *Dilliber* v. *Hana Life Ins. Co.* 3 Ins. Law Journal,
638 ; *Foot* v. *Ætna Life Ins. Co.* 5 Big. 324 ; *Day* v. *Mut. Bene-
fit Life Ins. Co.* 3 Ins. Law Journal, 254 ; s. c. 4 Big. 15 ; *Kel-
sey* v. *Ins. Co.* 35 Conn. 225 ; *Miller* v. *Ins. Co.* 2 Big. 693 ;
*Anderson* v. *Fitzgerald*, 2 Big. 341.   But if not a warranty, yet
the statement that the assured had not the heart disease,though inno-
cently made, and in respect to a latent disease of which he was
unconscious, avoided the policy.   *Campbell* v. *New England
Mutual Life Ins. Co.* 98 Mass. 381 ; s. c. 1 Big. 229, 243 ; 3
Kent Com. 372, 373 ; *Sawyer* v. *Coasters' Mut. Ins. Co.* 6 Gray,
221 ; *Wilbur* v. *Bowditch Mut. Fire Ins. Co.* 10 Cush. 446, *per*
SHAW, C. J. ; *Kimball* v. *Ætna Ins. Co.* 9 Allen, 540 ; *Campbell* v.
*New England Mut. Life Ins. Co. supra ;  Anderson* v. *Fitzgerald*,
4 H. L. Cas. 484 ; *Davenport* v. *New England Ins. Co.* 6 Cush.
341 ; *Ætna Life Ins. Co.* v. *France*, 1 Otto. 510 ; s. c. 5 Big.
587 ; *Foot* v. *Ætna Life Ins. Co.* 5 Big. 324 ; *Wright* v. *Equitable
Ins. Co.* 5 Big. 401.

Thus it was immaterial whether the assured reasonably would
have been expected to know he had disease of the heart.

The proof was, that the assured was injured in the army by a
kick of a horse, and was drawing a pension on that account when
he made the application for insurance.   The only inference from
the exceptions is that the kick caused the trouble with his heart ;
and that trouble had so increased that at about the time he applied
for insurance he was applying for an increase of pension, and got
it raised from four to eighteen dollars per month.   The question
in the application was plain, simple, and untechnical, and was the
only question to submit to the jury.   Introducing the words, " ac-
cording to common understanding," was varying the terms of the
contract by the introduction of a vague phrase, that might mean
one thing or another, and was sure to be a stumbling-block to the
jury.

*Prout & Walker* and *P. R. Kendall*, for the plaintiffs.
. The exception to the submission of the fifth question to the jury
is not well taken.   The question was for the jury and not for the

court; and the words, " according to the common understanding," conveyed the true rule governing the interpretation of the interrogatory as propounded to the deceased. The jury heard all the evidence in respect to the alleged injury, and has found that it did not constitute a " serious personal injury," according to the common understanding of the words. This is conclusive. *Boos* v. *World Mut. Life Ins. Co.* 5 Big. 351.

Although the assured had disease of the heart when the interrogatories were propounded, the jury have found that it was of so subtle a nature that he not only did not know it, but might not reasonably have been expected to know it. The County Court properly held that the contract should receive a reasonable construction, in view of the situation of the parties ; and that failure to answer correctly a scientific question as to which the assured not only did not know, the truth. but could not reasonably have been expected to know it, was not a defence. *Field* v. *Am. Popular Life*, 5 Big. 316 ; *Campbell* v. *N. E. Life Ins. Co.* 1 Big. 229 ; s. c. 98 Mass. 381 ; *Houghton* v. *Man. Ins. Co.* 8 Met. 114 ; *Price* v. *Phœnix M. L. Ins. Co.* 17 Minn. 497 ; s. c. 3 Big. 625 ; *Smith* v. *Fairlie*, 6 C. & P. 1 ; s. c. 2 Big. 244, and n. ; *Fowkes* v. *Manch. & London Life Association*, 3 Best & S. 927 ; s. c. 2 Big. 631. The answer was technically a representation and not a warrant. A party has no right to rely upon a representation of such a nature. 2 Parsons Cont. 270, *et seq.* As the fact was not within either the knowledge or the sources of knowledge of the assured, the statement was nothing more than the expression of his opinion, and must have been so treated by the company. Chit. Cont. 478 ; 2 Parsons Cont. 275 ; *Foster* v. *Estate of Caldwell*, 18 Vt. 176 ; *Beals* v. *Olmstead*, 24 Vt. 114.

The opinion of the court was delivered by

Powers, J. This was an action of debt. founded upon a policy of insurance upon the life of Daniel N. Powers, issued by the defendant, and made payable to the plaintiffs.

The plaintiffs proved the execution of the policy, the death of the assured during its currency, and the giving of reasonable notice thereof to the defendant.

The application of the assured for the policy was put in evidence by the defendant, from which it appears that, among other things, the applicant was asked whether "he now or has ever had * * * disease of the heart ;" to which the applicant answered, " No."

In the application, following this question and answer, and over the signature of the applicant, is the following stipulation : "And it is expressly stipulated and agreed, that the above application and this declaration shall form the basis of the contract between the applicant and the North Eastern Mutual Life Association of Brattleboro, Vermont, and that if any misrepresentation, or fraudulent or untrue answers, have been made, * * * * that then, in either event, this contract shall become null and void."

The policy contains the following provision : " In consideration of the representations and agreements made in the application therefor, and the payment, etc., * * * the said Association does hereby issue this policy to Daniel N. Powers, upon the following agreements ; upon the death of the said Daniel N. Powers, he having conformed to all the conditions thereof," etc., payment will be made to the plaintiffs.

The policy further provides : " This policy is issued by the association and accepted by the assured, upon the following conditions and agreements: " V. * * * or in case the answers or declarations made in the application for this certificate shall be found in any respect untrue, then this membership shall cease, and this policy, with all its agreements and guaranties, shall be null and void, and in every such case this association shall not be liable."

At the trial the jury found specially that the applicant, at the time of his application aforesaid, had the heart disease, and also that he did not, and would not reasonably have been expected to, know that he had this disease ; and upon this verdict the defendant contends that the policy is avoided.

A policy of insurance is to be construed like other contracts *inter partes ;* if the language is ambiguous, it is to be construed strongest against the party using it; if plain and unequivocal, it is to have its ordinary signification. In this case the parties have

mutually agreed upon the terms of their contract; the language embodying it is plain; and its scope and effect are neither difficult nor uncertain.

By the terms of the policy and application above set forth, the parties agreed that the truthfulness of the applicant's answers to the questions propounded *should be the basis* upon which the validity of the policy should stand—if true, the policy should be a valid contract; if untrue, the policy should have no force as a contract.

The applicant assumed the whole risk of the consequences, if his answers turned out untrue. · The existence of disease in an applicant for life insurance, is the presence of the very peril the company insures against. It is like insuring a building already on fire. The question as to the health of the applicant is a preliminary one, to ascertain if he is an insurable subject. The force of the stipulations and conditions above recited is, to create a contract obligation on the part of the applicant that he was free from the heart disease. He agreed that such peril and risk would not be encountered by issuing the policy, and if such peril did exist, the contract should not be operative. Proof of the existence of the heart disease established a breach of the underlying contract upon which the policy rested.

It is wholly immaterial whether the applicant knew of the existence of the disease, because he agreed absolutely that it did not exist. Nor is it any answer to say that the question is a scientific one, and a layman might easily be deceived into a false answer. Scientific or simple, the applicant took the risk of the answer. If he had answered that he had no knowledge that the disease existed, the finding of the jury might affect the result.

The view we have taken is abundantly supported by authority. *Anderson* v. *Fitzgerald*, 4 H. L. Cases, 484; *Day* v. *Mut. Benefit Life Ins. Co.* 4 Big. 15; *Miles* v. *Conn. Mut. Life*, 3 Gray, 580; *Wilbur* v. *Ins. Co.* 10 Cush. 449; *Ætna Life* v. *France*, 1 Otto, 510.

The judgment of the County Court is reversed; and as the judgment was entered upon special findings and our judgment bars a recovery, judgment is to be entered for the defendant.