## COMMONWEALTH LIFE INS. CO. v. ANGLIN.

Western Section.   July 19, 1933.

Petition for Certiorari denied by Supreme Court, December 9, 1933.

Fitzhugh, Murrah & Fitzhugh, of Memphis, for plaintiff in error.
Luther H. Graves, of Memphis, for defendant in error.

SENTER, J.   The parties will be referred to as in the court below, Mattie A. Anglin, plaintiff, and Commonwealth Life Insurance Company, defendant.   This is a suit by plaintiff, Mattie A. Anglin, against the Commonwealth Life Insurance Company on a policy of life in-

surance, issued by the defendant upon the life of plaintiff's son, Herbert C. Anglin, in the sum of $500, and also seeks to recover twenty-five per cent additional as statutory penalty for a failure to pay the policy on the averment that the failure to pay was not in good faith.

To the declaration the defendant filed pleas of nil debit and non assumpsit, and tendered the plaintiff in its said pleas the sum of $15.94, representing the premium paid on said policy, plus interest.

At the hearing of the cause, at the conclusion of all the evidence, a motion for a directed verdict in its favor was made by the defendant, which motion was overruled. The jury returned a verdict in favor of plaintiff in the sum of $600, without designating or dividing the judgment, as so much for principal and so much for penalty. A motion for a new trial was seasonably filed by the defendant, which motion was overruled and disallowed, and, from the action of the court in overruling and disallowing its motion for a new trial, and in rendering judgment on the jury verdict, the defendant prayed and was granted an appeal in the nature of a writ of error to this court, and has assigned errors.

The first assignment of error and the second are directed to the action of the trial judge in overruling defendant's motions for a directed verdict, made, first, at the conclusion of plaintiff's evidence, and renewed at the conclusion of all the evidence.

The third, fourth, fifth, and seventh assignments challenge the action of the court in refusing to give in charge to the jury certain special requests submitted by the defendant after the general charge to the jury had been given.

The eighth assignment is directed to the form of the jury verdict, on the ground that the same is indefinite, in that the verdict of the jury is for a lump sum of $600, and the amount of the policy sued on was $500, and the interest thereon would approximate $40, and the verdict does not show what part of the $600 was intended as principal, or interest or penalty.

The ninth assignment charges error upon the part of the trial judge in refusing to permit the defendant to introduce in evidence, or to even use for the purpose of cross-examining plaintiff, the proof of death made out and signed by the physician of assured.

The tenth assignment charges error upon the part of the trial judge in his charge to the jury on the question or subject of the statutory penalty sued for.

The sixth assignment is directed to a portion of the general charge of the court to the jury, which will be hereinafter set out and discussed.

By the eleventh assignment it is said that there was no evidence to support the verdict of the jury.

We will not take up and discuss each of the assignments of error, or the questions made thereunder in the order in which they are made.

The insured, Herbert C. Anglin, at the time the policy was issued, was a boy about sixteen years of age. The application for the insurance was signed by his mother, Mattie A. Anglin, the plaintiff herein. The application provided on its face, among other things, as follows:

"The undersigned hereby declares and warrants that the representations and answers made above are strictly correct and wholly true; that they shall form the basis and become part of the contract of insurance (if one be issued) : That any untrue answers shall render the policy null and void, and that said contract shall not be binding upon the company unless upon its date and delivery the insured be alive and in sound health."

One of the questions asked the plaintiff when she applied for the insurance was whether or not the proposed assured, Herbert C. Anglin, "had or ever had cancer." Her answer to this question was, "No." Another question in the application was, "Is life proposed now in sound health?" And her answer was, "Yes."

The policy contained a provision as follows:

"No obligation is assumed under this policy, prior to its date of delivery, nor unless on said date of delivery the assured is alive and in sound health."

It appears that the assured, Herbert V. Anglin, was operated on in April, 1930, for sarcoma or cancer of the eye. The application for the insurance was signed on July 17, 1930. It also appears that among other questions asked and answered in the application is question 13, as follows: "State accident, operation or disease suffered in last five years? Give full details and severity of each?" Ans. "Cyst removed from r. upper lid, Apr. 2. 1930. No recurrence, wound clean. Storis upper lid improving."

It also appears that the answers were written into the application by the agent of the insurer. Plaintiff testified in substance that at the time the application was signed she told the agent that an operation had been performed on the eye, and told him that a tumor had been removed from the eye. It also appears that, when the application was turned in to the local office in Memphis, the statement in the application with reference to the operation for the removal of a cyst from the eye challenged the attention of the manager of the local office, and he called upon a physician to go to see the applicant and learn the nature and seriousness of the operation. The physician, by direction of the local manager of defendant, went to the home of the assured and talked to plaintiff and to the assured, and was then told by the mother of assured of the operation that had been performed at the hospital for the removal of said formation on the eye. She states, for the removal of a tumor from the eye,

and the physician states she said for the removal of a cyst. The plaintiff and other members of the family testified that the young man appeared to be in good health and fully recovered from the operation. The doctor testified that, when he saw the assured on the occasion of his visit, the young man appeared to be in good health. A scar appeared on the eye which was explained as the scar resulting from the operation for the removal of whatever growth was there. The physician testified that he did not think that the operation was for any serious trouble, and the wound appeared to be healing nicely, and he did not make any further investigation. It is shown that within a few months after the policy was issued the assured died of cancer, and it was also shown that the operation performed on the eye was for a cancerous growth, referred to as sarcoma, which is shown to be a cancer.

Appellant contends that it appears from the uncontradicted evidence in the record that the assured was not in good health, or sound health at the time the application was signed for the insurance, and was not in sound health at the time the policy of insurance was delivered and the premium collected.

It was upon this that the defendant largely based its motion for a directed verdict in its favor. The trial judge refused to sustain this motion, and, at the conclusion of all the evidence, again overruled defendant's motion for a directed verdict in its favor. The trial judge proceeded to charge the jury, and the portion of the charge complained of under the sixth assignment of error is as follows:

"But if you find that the boy did not use the word 'Cyst' and that was the doctor's language, or if you find that even did the boy use the word 'cyst' that the doctor in the exercise of reasonable care should have gone to the hospital and examined the records to see what was really removed—the theory of the plaintiff is that this boy gave the doctor all the information they had about it, told him where the thing was cut off of his eye, and who did it, and that therefore, put the company in position to know all or more than he knew about it, and that if the company pleased to stop there and made no further investigation as to what really was the matter with the boy's eye, then the company must stand on that policy and is liable; that if they want to rely on that defense, the company should have pursued the inquiry for the purpose of determining whether there was a malignant disease, or an innocent disease like what they testify existed. It is the law, Gentlement of the Jury, that if the company was put, through its physician, in possession of all the information that the assured had, and the doctor failed to pursue or to determine the situation and issued the policy, then the company cannot rely upon the defense that he had this cancer. The law about the matter is reasonable and just. Of course, if this plaintiff or her son, Herbert,

either, knew that the boy was suffering with a cancer or malignant growth and procured a policy, the company is not liable. But if the company was given fully and fairly all the information that they knew about it, and they failed to go and look at the record or consult the doctor who performed the operation, the company cannot rely upon the fact that the boy might have had cancer at the time.''

The above charge was in effect and to all intents and purposes a directed verdict in favor of the plaintiff. There was no insistence made by the defendant that the doctor who was sent out to see this young man made any further investigation, or that he went to the hospital where the operation had been performed or to the doctor who performed the operation to ascertain the exact nature of the operation, or the nature of the cyst, tumor, or growth that was removed from the eye of the assured.

After the visit of the doctor to this young man, and after discussing the operation with the young man and his mother, and after looking at the scar of the wound and observing the general appearance of the young man, this physician was apparently satisfied that the operation had not been for any serious cause or ailment, and so reported to the local manager.

The authorities are numerous to the effect that, where there is a provision in the policy, as in the policy now considered, that no obligation is assumed under the policy unless on the date of delivery the assured is alive and in sound health, said provision is reasonable and enforceable. In the case of Metropolitan Life Ins. Co. v. Chappell, 151 Tenn., 299, 269 S. W., 21, 24, a provision in the policy sued on in that case was practically identical with the provision on the subject in the instant case, and wherein the court said:

''We are of the opinion that the provision in the policy that the defendant assumed no obligation thereunder, unless the insured was 'in sound health' at the date of the policy, was valid, and was binding on the insured.''

The court in that case further held:

''The application of the condition in the policy that the defendant assumed no obligation, unless the insured was in sound health at the date of the policy, is not controlled by the insured's knowledge or lack of knowledge that she was not in sound health. The existence of life and sound health in the insured, at the date of the policy, was a condition precedent to the promise of insurance. Barker v. Metropolitan Life Ins. Co., 188 Mass., 542, 74 N. E., 945; Packard v. Metropolitan Life Ins. Co., supra [72 N. H., 1, 54 Atl., 287]. As was said in the case of Murphy v. Metropolitan Life Ins. Co., supra, it is clear from the language of the policy that defendant's promise of insurance was not absolute, but conditional, and that the existence of life and sound health in the insured on the date of the policy is the condition on which the promise is made. It is the fact of sound health

of the insured which determines the liability of the defendant in this character of policies, not apparent health, or his or any one's opinion or belief that he was in sound health."

Numerous other cases from this state and other jurisdictions are cited and referred to in support of the above holding. However, this holding findings so general support, and is the settled law to the extent that further reference to the authorities is unnecessary. As an abstract proposition, its soundness is conceded by appellee in the reply brief.

The contention of appellee is that in the present case, and under the facts of the present case, the defendant is estopped to rely upon the defense that the assured was not in sound health at the time the application was signed or at the time the policy sued on was issued and delivered. This contention by appellee rests upon the theory that both the assured and the mother of the assured gave to the physician who made the examination the benefit of all the information they each had with reference to the physical condition of the assured, and especially with reference to the operation for the removal of the growth on assured's eye, and that, having put the examining physician of the defendant upon notice that an operation for the removal of some growth on the eye had been performed at the hospital, it was the duty of the examining physician, as the agent of the insurer, to have followed up the information given by going to the hospital where the operation had been performed and examine the hospital record of the case, and that his failure to do so operates to estop the defendant from relying on the defense that the insured was not in sound health at the time the policy was delivered. In support of this contention, appellee relies upon certain holdings by this court and the Supreme Court: Phillips et al. v. Insurance Co., 14 Tenn. App., 356, and Life & Casualty Ins. Co. v. King, 137 Tenn., 685, 195 S. W., 585.

The learned trial judge, in charging the jury as above set forth, evidently took this view of the law, and so instructed the jury.

This court in the Phillips case, and in other cases, has held as set forth in the fourth headnote to said case of Phillips v. Insurance Co., supra:

"If the insured notified the insurance company or its agents of the real facts, at or before the time of the issuance of the policy, as to the condition of the title, then, notwithstanding the provisions of the policy that he is the sole owner, the insured can recover, for such knowledge constitutes a waiver of the condition of the contract, and the insurer is estopped from asserting the breach of such condition."

That was a fire insurance case in which the defendant relied upon certain provisions in the policy with reference to the ownership of the property, and where the insured notified the agent taking the application of the full facts with reference to the title, and, under

the rule that notice or knowledge of facts by the agent is inputable to the principal, this court held that this condition of the policy was waived under the facts of that case, and that the insurer would be estopped from relying thereon.

To the same effect was the case of Life & Casualty Insurance Company v. King, supra. In those cases the true facts, or the real facts, were communicated to the agent. That line of cases is distinguished from the present case, in that there is no claim that the assured or the mother of assured, or any one else, ever informed the defendant or any of its agents that the assured had had an operation for the removal of a malignant cancer from the eye of the assured. While it may be true that the assured and assured's mother frankly gave the physician all the information they had with reference to the operation that had been performed on the eye of the assured, since they did not know that it was a cancerous growth that had been removed, they could not have stated a fact not within their knowledge. It appears from the uncontradicted evidence that the operation performed on assured's eye was for the removal of a malignant cancer, and not for the removal of a mere harmless cyst or tumor.

It also appears from the record that this was what is referred to as an industrial insurance policy, and not usual for a medical examination. However, when the application signed by assured or his mother was examined, the reference made therein, under answer 17 to the question, it appeared that on April 2, 1930, the assured "had eye operated on," and this statement in the application challenged the attention of the local medical examiner of defendant, and he was sent, or went, to the home of assured to investigate and ascertain the nature of the operation. He talked to the assured, and probably to assured's mother, and examined the scar of the wound resulting from the operation, and also observed the general appearances of the assured. According to all the evidence, the assured at that time appeared to be in good health. The scar appeared to be clean, and there was nothing either in the appearance of the assured or the scar, or the information imparted to the physician, to lead him to believe that the operation had been for the removal of a malignant cancer. At that time there had not been a recurrence, and the examining physician, in answer to question 13, and he states from the information given him by the assured, stated: "Cyst removed from r. upper lid April 2nd, 1930. No recurrence, wound clean, storis upper lid improving."

The physician testified that, from the information he received from the assured with reference to the operation, and from what he could see as to the general appearance of the applicant, and the then condition of the scar on the eyelid, he did not consider it serious. It would thus appear that the physician did make an investigation, but failed to discover the true fact that the operation had been for the removal of a malignant cancerous growth.

We are also of the opinion that there is no material evidence that the mother of the assured willfully concealed material facts from the physician or from the agent of the defendant, and we think that it appears from the evidence that the physician was given the benefit of what the assured and his mother then knew as to the condition of the assured. We also think that it is clear that they were mistaken as to the true condition. It is also true that the physician who made the examination was mistaken as to the true condition. So far as the record discloses, he was a capable physician, and there was nothing in the appearance of the applicant as to general condition of health, and nothing in the appearance of the scar from the operation, to lead him to believe or to think that the operation had been for a serious trouble. Certainly he could have had no purpose in making a favorable report if he had not believed that the operation referred to was not of a serious character or for a serious cause. The young man appeared to be in excellent health. The immediate members of the family testified that, at the time the application was taken, and at the time the examination was made by the physician, and at the time the policy was delivered, the assured appeared to be in good health.

It is true that, if the physician had gone to the hospital and examined the hospital record, and had also looked up and consulted the surgeon who performed the operation, he would have, no doubt, discovered that the operation was for the removal of a malignant or cancerous growth from the eye, and following the operation X-ray treatments had been given the patient. Assuming that such an investigation by the physician would have resulted in disclosing that the assured had been treated for cancer, and that the operation was for the removal of a malignant cancerous growth, the only result would have been that the application would not have been accepted by the defendant. Certainly no reputable insurance company would knowingly write a policy insuring the life of one whom it knew was then suffering from a cancer, even though the operation and treatment, so recently had, had temporarily arrested the disease. So that the assured was in no way prejudiced by the failure of the physician to follow up the information received at the time he made the examination. The fact remains that the applicant was not insurable in his then condition.

It is the fact of sound health of the insured which determines the liability of defendant under such a provision as is contained in the policy sued on, "not apparent health, or his or anyone else's opinion or belief that he was in sound health." If the assured was in fact not in sound health, as that term is construed, either at the time the application was signed or at the time the policy was issued and delivered, there could be no recovery under the provisions of the policy sued on.

538

We cannot say as a matter of law that the failure of the physician to further pursue the investigation by examining the hospital records, under the facts and circumstances as shown by the record in this case, would operate as an estoppel of defendant to rely upon this valid and reasonable provision of the policy, which is a condition precedent to any obligation or liability upon the defendant. We are of the opinion that, under all the facts and circumstances as disclosed by the record, the failure of the examining physician to consult the hospital records, or the physician who performed the operation, was justified, and such failure in no sense prejudiced the assured, for the reasons hereinbefore stated.

There is some evidence in the record when considered in its most favorable light to plaintiff's case, that would warrant the submission of the case to the jury on the question as to whether or not the assured was in sound health at the time the policy was issued and delivered and at the time the application was taken. The application was taken about three months after the operation. So far as the record discloses, the assured was in apparent good health at the time the application was taken and the policy delivered, and continued in apparent good health for several months thereafter, and in the following spring was engaged in farm labor. We are of the opinion that the assignments of error predicated upon the action of the trial judge in refusing to grant defendant's motion for a directed verdict cannot be sustained.

However, we are of the opinion that the learned trial judge was in error in charging the jury as hereinbefore set out; that this charge was erroneous, and in effect an instruction to the jury, under the undisputed evidence, to return a verdict in favor of plaintiff. The sixth assignment of error is accordingly sustained.

It becomes unnecessary to consider the other assignment of error, since the cause must be reversed and remanded for a new trial.

It follows that the judgment of the lower court is reversed and the cause is remanded to the circuit court of Shelby county for a new trial. The cost of this appeal will be paid by appellee.

Heiskell and Anderson, JJ., concur.