## John R. Lavigne v. Louis G. Rossetti

[114 A2d 407]

February Term, 1955.

Present: Sherburne, C. J. Cleary, Adams and Chase, JJ., and Hulburd, Supr. J.

Opinion Filed May 3, 1955.

*Leary & Leddy* for the defendant.

*McNamara & Larrow* and *John R. Lavigne* for the plaintiff.

**Sherburne, C. J.**  This is an action of tort for personal injuries received by the plaintiff upon premises owned by, and leased of, the defendant, and comes here after verdict and judgment for the plaintiff upon the defendant's exceptions to the admission of evidence and to the denial of his motions for a directed verdict and to set the verdict aside and enter judgment for the defendant notwithstanding the verdict.

Viewed most favorably to the plaintiff the evidence reasonably tended to show the following facts:  The defendant has owned a building with four apartments on South Winooski Avenue in Burlington since 1948.  On September 5, 1953, the plaintiff, through defendant's son John, leased the northerly ground floor apartment therein, consisting of two rooms and a "share the bath", and a shed, back porch, and landing and stairs leading from the porch to the ground.  Two days later, while he was standing on the edge of the porch or on the landing for the purpose of wiping off the lines of the clothes reel, two decayed floor boards gave way causing the injuries complained of.  Immediately after the accident plaintiff's wife telephoned to the residence of the defendant in Winooski notice of the accident.  Following this John Rossetti, defendant's son, called and talked with the plaintiff about the accident and blocked off the hole in the floor with some lattice work.  About two weeks afterward the defendant repaired the porch and

took down the lattice work put up by John Rossetti. A Mr. Hubbard and his wife had previously rented this apartment upon the same basis, and while they lived there the defendant twice repaired the porch, but it did not appear what the repairs were or how long the Hubbards lived there.

The defendant never did anything about the apartment house himself. At his direction John Rossetti looked after it generally, leasing an apartment when empty and taking the rent. When John Rossetti came to see the plaintiff after the accident there was some talk about medical attention, and John told him not to see a doctor until he first saw his father. John came back two days later and reported that he had talked with his father and said "My father said it was all right to see a doctor", and upon the plaintiff inquiring about his lost time John replied: "You don't have nothing to worry about, that will all be taken care of." The only authority from the defendant for John Rossetti to make any such statements is contained in the testimony of the defendant, who testified that he sent John down on the day of the accident to tell the plaintiff to get a doctor and take care of himself, and that he told John if he went over to see the plaintiff to tell him to get a doctor if he needed one, and that John later told him that he had done so. He testified on cross-examination that John never told him that the plaintiff had asked him who was going to take care of his medical bills and things like that. There is no evidence that John told him that. The evidence of John Rossetti's statements to the plaintiff was received subject to defendant's exception that he was not shown to have any authority from his father to make them.

The lower court regarded the plaintiff's complaint as setting forth two counts, one on an agreement to repair, and one on defendant's control of the premises, and granted defendant's motion for a directed verdict on the question of defendant's agreement to repair and submitted to the jury only the issue of control. That is the only issue briefed by either side and the only one necessary to decide other than any possible admission of liability.

The evidence relative to blocking off the hole in the porch floor, the repair of the floor and the former repairs made upon

the porch when occupied by the Hubbards was received for the limited purpose of showing control of the porch and landing in the defendant, and not for the purpose of showing negligence.

■ As stated in *Beaulac* v. *Robie*, 92 Vt 27, 33, 102 A 88, it is well settled that, if the landlord while renting premises retains portions thereof under his control, the responsibility for injuries to persons rightfully there is his and not his tenants. He is liable not in his character as lessor but as owner and occupant. He owes a duty to his tenants and those on the premises at their invitation to keep such undemised parts reasonably safe. In that case the accident happened on a trap door in a platform along the front of a store rented by the defendant Robie to one Slayton under a verbal lease, in which no mention was made of the platform. The trap door was used by one Chaffee, to whom Robie, subsequently to the Slayton lease, leased a tenement over the Slayton store and room under the store to store wood and coal, and gave him the right of access to the cellar through the trap door, and Chaffee occasionally used it to put wood in the cellar. In this situation it was material to show who was responsible for the platform being out of repair, and it was held on page 30 that evidence that Robie subsequently, and while the terms of the lease remained the same, made repairs on it, would, in the circumstances, have some tendency to show that he retained control of it, but that evidence of a single instance of repairs standing alone might not be sufficient evidence of control.

As bearing upon this question of evidence of repairs being admissible for showing control the plaintiff cites an annotation in 170 ALR 85-87, and the heading on page 86 reading "Evidence of subsequent repairs by the landlord has, however, been admitted in evidence under various exceptions to the general rule, usually for showing his control of the premises." This adds nothing to the Beaulac case, supra. Nothing is called to our attention that applies to premises expressly leased to the tenant.

*O'Malley* v. *Twenty-five Associates*, 170 Mass 471, 49 NE 641, 642, is called to our attention. That was a case of a defective hoisting apparatus erected by the landlord for the

use of his tenants. As the opinion states "This is not a case where it was conclusively shown that the hoisting apparatus was in the exclusive control of the tenant Dias, or of all the tenants of the building. If the defendant furnished and retained control of this apparatus as a means provided for hoisting merchandise for the use of his tenants, it was his duty to take reasonable care to furnish a suitable apparatus and to keep it in suitable condition. In our case only the plaintiff had the right to use the landing and porch.

*Vinci* v. *O' Neill* 103 Conn 647, 131 A 408, is cited. Here evidence of repairs made to a veranda after an accident was held admissible for the purpose of showing that the landlord retained control of the veranda. In that case the veranda ran entirely across the building and was also used by the tenants of another apartment which opened upon it. This is unlike our case.

The citation of the annotation in 26 ALR 2d 468, about landlord's liability for injury due to defects in exterior stairs, passageways, areas or structures used in common by tenants, adds nothing. We are not concerned with cases where the landlord retains control of a porch, platform or stairway for the common use of his tenants. And the citation of Wigmore, §283 merely states the general rule similar to that given in the Beaulac case, supra.

The situation in this case is much like that in *Shegda* v. *Hartford-Connecticut Trust Co.*, 131 Conn 186, 38 A2d 668, 669. There the defendant owned a two family house, divided vertically into two separate tenements. One of these was occupied by the plaintiff's mother under a month-to-month lease. Within the tenement was a flight of stairs leading to the second floor. While the plaintiff was descending these stairs one of the treads broke, owing to its defective condition, causing her to fall. There, like here, it was stressed that the defendant had retained control of the leased premises for the purpose of making repairs. The only evidence of such a reservation of control was to the effect that on two occasions, when rent was paid, the attention of employees of the defendant was called to the defective condition of the stairs and promises were made that they would be repaired, and that the defendant

did in fact make repairs to the stairway and to certain other portions of the premises after the accident. The court said: "A promise by the landlord, unsupported by any consideration, that he would make certain repairs within a tenement or the fact that he has made them might serve to corroborate other evidence indicating a reservation of a right of control, * * * but in itself testimony of this kind is open to too many explanations other than an assumption of control and is too much out-weighed by the implications growing out of the nature of the estate created by the leasing to afford a basis upon which to find a reservation of such control of a stairway wholly within the tenement as to impose upon the landlord an obligation to make repairs."

■ We think that the foregoing applies here. It should be noted that the plaintiff sent for the defendant and called his son's attention to the condition of the porch floor or landing before the repairs were made. It is not shown that the plaintiff did not request the repairs, nor is it shown that the prior tenants of this apartment did not request the prior repairs to the porch, whatever they were. In a situation like this where premises are leased without any agreement whatsoever about repairs, if the landlord makes particular repairs upon the premises leased, at the tenant's request, he enters and makes the repairs by permission and not under any reserved right of control for that purpose.

On this phase of the case we have not passed upon the exceptions to evidence, but have assumed for the purposes of the above conclusions that all the evidence received was admissible.

During the discussion of the defendant's motion for a directed verdict the trial court asked if there wasn't something else besides an isolated instance of repair, if the court properly received the evidence about an offer to pay the plaintiff's hospital expenses, to which defendant's counsel replied that he didn't think there was any such evidence in the case. In its charge the court stated that as bearing on the question of liability the plaintiff has offered evidence to establish that the defendant, through his son, offered to pay for the plaintiff's

462

hospital and medical expenses. From our examination of the evidence we do not think that it is shown or can be inferred that John Rossetti had authority from the defendant to bind his father to pay the plaintiff's doctor, to say nothing of his hospital or other expenses. The instructions to John to tell the plaintiff to get a doctor and take care of himself, or to get a doctor if he needed one, in view of what information the defendant is shown to have previously received, amount to no more than friendly advice, and do not warrant an inference that the defendant authorized his son to agree to pay any of the plaintiff's expenses.

The burden of proving agency was upon the plaintiff. *Citizens Savings Bank & Tr. Co.* v. *Jenkins*, 91 Vt 13, 23, 99 A 250. Nothing is better settled than that agency cannot be proved by the mere declaration of the agent out of court. *Hendrickson* v. *International Harvester Co.*, 100 Vt 161, 165, 135 A 702, and cases cited. It was error to receive evidence of John Rossetti's statements to the plaintiff. Consequently this evidence received over objection is not for consideration in passing on the motion for a directed verdict. *Jones* v. *Gay's Express*, 110 Vt 531, 535, 9 A2d 121. Whether such evidence, if admissible, would have been enough to take the case to the jury we need not decide. Since there was no admissible evidence upon which the jury could have based a verdict, defendant's motion for a directed verdict should have been granted, and its denial was error.

*Judgment reversed and judgment for the defendant to recover his costs.*