**Georgianna Grover v. John Hancock Mutual Life Ins. Co.**

[125 A2d 571]

February Term, 1956.

Present:  **Jeffords, C. J., Cleary, Adams, Chase, and Hulburd, JJ.**

Opinion Filed May 1, 1956.

Opinion on Motion for Reargument Filed October 2, 1956.

*Barber & Barber* and *Ralph Chapman* for the defendant.

*John S. Burgess* for the plaintiff.

**Adams, J.** This is an action of contract on an insurance policy on the life of Byron R. Grover, deceased. The plaintiff brings suit as the beneficiary. Trial was by jury with a verdict and judgment for the plaintiff for the amount of the policy with interest. The case is here on the exceptions of the defendant.

We think that we should first say that the plaintiff, during the trial, took several exceptions and made a motion for a directed verdict that was overruled. She has filed no bill of exceptions, signed by the presiding judge as provided by

V. S. 47, §2120. She has briefed in connection with the defendant's brief several of these exceptions and relies heavily upon an exception to the action of the trial court in admitting in evidence a photostatic copy of the policy in question. This was done in the absence of the original which was not in court but had been in the possession of the plaintiff. The provisions of section 2120 are mandatory and a compliance therewith is necessary to give this Court jurisdiction to hear and decide the questions sought to be raised by an excepting party. *Horicon* v. *Langlois*, 115 Vt 81, 84, 52 A2d 888, and cases cited. Although the verdict and judgment was in her favor, if the plaintiff desired to preserve her exceptions and present them in this Court for decision, she should have filed her own bill of exceptions in accordance with the statute. *Allen* v. *Thrall*, 10 Vt 255, 259. Not having done so, the exceptions become a nullity by force of the statute. *Cole* v. *Walsh*, 97 Vt 256, 259, 122 A 664. However, lest the plaintiff feel that she has been unduly prejudiced by the failure to file a bill of exceptions, we add that an examination of the record satisfies us that the admission of the copy of the policy was without error.

The policy was issued without a medical examination but upon an application dated May 4, 1953, signed by the insured. It applied for a 20-year payment life policy in the amount of $750., the premium payable monthly and the age of the applicant was given as 28. Therein the question, "Are you in sound health?" was answered "Yes". The question, "Have you now, or have you had any of the following ailments or diseases?" * * * "Disease of Heart, High Blood Pressure" * * * was answered, "No". The question, "Have you within the past five years been treated for any ailment or disease by a physician * * * ?" was answered "No". This application also stated, "It is understood and agreed that: [a] The statements and answers recorded above are full, complete and true and are made by me to induce the above named Company to enter into a contract of insurance on the basis of their truth * * * ."

A policy, dated May 20th, 1953, for $750. was issued payable to the plaintiff as beneficiary. It contained the following provisions, "This policy includes the conditions and pro-

visions set forth on this and the three following pages and constitutes the entire contract between the parties." * * * "INCONTESTABILITY,—This policy shall be incontestable after it has been in force during the lifetime of the Insured for one year from its date of issue, except for non-payment of premium." * * * "POLICY WHEN VOID,—if on the date of issue of this policy the Insured was not in sound health * * * or if within two years prior to said date, the Insured was attended by any physician * * * for any serious disease * * * this policy shall be voidable by the Company * * * unless reference to each such treatment or prior diseases is endorsed hereon by the Company or unless this policy is incontestable at the date of the death of the insured. * * * If this policy does not take effect, or is voided by the Company, the Company shall refund the premium paid."

The insured deceased on April 29, 1954. The claim of the defendant under its special defenses was that the policy was voidable and not a binding contract of insurance, for the reason that the insured was not in sound health on the date the policy was issued and that, within two years of that date, the insured had been treated by a physician for a serious disease and that such treatment or disease was not endorsed on the policy. The evidence was that the policy did not have any such endorsement on it.

The defendant tendered and paid into court $56.15, it being the amount of the premiums paid of $33.50, together with interest thereon and the plaintiff's taxable costs then accrued. The court, however, in its charge made no reference to the plaintiff being entitled to recover that amount if the defendant's theory was correct.

At the close of the evidence the defendant moved for a directed verdict. In doing so it called to the attention of the court, the fact of the tender and that the plaintiff might be entitled to a verdict for that amount under the general issue. Two grounds of the motion were specified, [1] that the substantially uncontradicted evidence showed that the insured was not in sound health on the day the policy was issued and [2] that the insured had been treated by a physician for a serious disease within two years of the date of the policy and that this

was not endorsed on the policy. After the jury returned a verdict for the plaintiff for the full amount of the face of the policy and interest, the defendant filed a motion to set aside the verdict and for judgment notwithstanding the verdict. The grounds of this motion were the same as in the motion for a directed verdict. The court overruled both motions and allowed the defendant exceptions.

■ On these issues raised by the defendant, the controlling question is whether on all the evidence there is any room for opposing inferences-whether the evidence on these issues is so conclusive that fair minded men could not honestly differ as to the conclusion to be drawn therefrom. In the absence of rational doubt, it is the duty of the court to decide the question as one of law and instruct the jury accordingly. *Spaulding, Admr.* v. *Mutual Life Ins. Co.*, 94 Vt 42, 55-57, 109 A 22; *Jacobs* v. *Loyal Protective Ins. Co.*, 97 Vt 516, 522, 124 A 848; *Wellman, Admr.* v. *Wales*, 98 Vt 437, 447, 448, 129 A 317.

Dr. Walker, a physician who attended the insured once at his last sickness and who signed the death certificate was a witness for the defendant. We, here, summarize his testimony. He first saw the insured on Dec. 16, 1952, approximately six months before the policy was issued. At that time the insured gave the doctor a history of a severe headache of three weeks duration and that he was always subject to headaches usually of one day duration. He also told the doctor that he first knew he had high blood pressure, 185, at the age 21 when he had an insurance examination and the doctor recalled that he stated he was then rejected. The doctor took the insured's blood pressure, taking it in both arms. In one arm it was 164 over 120 and in the other it was 150 over 116. That was high and above normal and from the history the insured had this high blood pressure for at least seven years. The doctor prescribed phenobarbital, ¼ grain before each meal, and recommended a recheck in two weeks. He next saw the insured on January 2, 1953, took his blood pressure and it was higher than on Dec. 16; 174 over 120. The doctor recommended that the insured enter a hospital. The doctor next saw the insured on August 31, 1953 and he entered the

hospital on Sept. 1. The insured's high blood pressure was a continuous condition.

High blood pressure over a period of time causes enlargement of the heart and also affects the kidneys by causing changes in their arteries. When the insured was in the hospital a study was made of the kidney function and the insured had below normal kidney excretion which was due to his hypertension. In a certain per cent of cases with continued high blood pressure or hypertension, they go into heart failure as an end result and a certain per cent have cerebal hemorrhages from that condition.

The primary cause of the death of the insured on April 29, 1954 was [a] subarachnoid hemorrhage of 12 hours duration and [b] congenital aneurysm, a sac weakness in the wall of an artery, of 20 years duration. The high blood pressure would be more apt to cause a rupture of the weakened point. The opinion of the doctor was that, due to the hypertension, the insured was not in good or sound health on or about May 20, 1953.

On cross-examination the doctor testified that he classified the insured's hypertension as benign, that is a more or less stationary condition and that people with hypertension of that type generally reach old age and that the actual cause of death was the weak point in the arterial system. The insured appeared to be an active individual and the doctor did not recommend any curtailment of his work activities.

Dr. Lord also testified as a witness for the defendant. We summarize his testimony. He treated the insured on August 26, 1953. At that time he told the doctor that he had had high blood pressure for several months and had been under treatment by another physician. He added that a week previous he had a nosebleed and also said he had slight headaches and dizziness. The doctor took his blood pressure and it was 180 over 120, which the doctor said was above normal limits and that he heard Dr. Walker testify as to the dates when he took it and what it was on those dates. The effect of high blood pressure of long duration is damage to the kidneys and heart. From the case history that he took and the testimony that he had heard in court, in the doctor's opinion

the insured was not in good or sound health on or about May 20, 1953. This opinion was based on the facts of abnormally high blood pressure that Dr. Walker found in December 1952 and again in January 1953 and that he found in August 1953 which made it a continuing process which is apt to result in damage to the kidneys, strain on the heart and blood vessels. An individual with elevated blood pressure has not as good a life expectancy as one with normal blood pressure.

In reply to a question asked by the court, that considering the fact the insured was a layman, would his ill health have been noticeable to the insured, the doctor said unless he was told he might not have realized that his condition was serious and it was bad treatment to tell a patient with hypertension that, as it causes worry and makes the hypertension worse.

Mr. Fitzgerald, the agent for the defendant and a witness for it, testified about being at the home of the insured and obtaining the application for the policy. He testified on cross examination that he had no feeling that the insured was not in sound health when he delivered the policy some time after May 20 and that the insured never made any complaint to the witness of any sickness or injury.

The plaintiff was a witness in her own behalf. She testified that her husband, the insured, worked every day, that from the point of view of a wife, she considered his health good; that he had worked on a farm and went to work for the Crosby Milling Co. in 1948 or 1949 as a sweeper and maintenance man; that he had to take a physical examination at that time and told her a rupture was found but nothing else; that he was active in sports, played horseshoes every week and went to all the tournaments.

The annotator in 40 ALR 662 after stating that insurance policies invariably appear to contain a clause that the insured must be in 'good health' or 'sound health' at the date of the policy and no particular distinction appears to be made between the term 'good health' and 'sound health' makes the following statement, "The general rule appears to be that the term 'good health' when used in a policy of life insurance means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general

soundness or healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the date of the policy, does not render the policy void. And it seems that an apparent condition of good health or anyone's belief that the insured is in good health is not sufficient." The same rule is again stated in the annotation in 100 ALR 362. See also 29 Am Jur Insurance, §563 p. 456.

■ A provision in a life insurance policy that the company is not bound and does not assume any obligations unless at the date thereof the insured is alive and in good health is a valid condition precedent to liability on the part of the company and there can be no recovery on the policy where it appears that the insured was not in sound health at the date thereof. "The liability of the company is determined by the fact of sound health of the insured at the date of the policy and not by his apparent health, or by his, or anyone's belief or opinion that he was in sound health at that time." 44 CJS, Insurance, §257, 992-993.

■ By "illness" or "disease" as used in an application for insurance is meant a disease or illness of such a character as seriously to affect the general health and soundness of the insured and not a mere temporary indisposition, *Cummings* v. *Connecticut General Life Ins. Co.*, 101 Vt 73, 93, 142 A 82, and cases cited.

There are many cases which hold that a person who has certain diseases or afflictions is not in good or sound health. We have had only one called to our attention in which high blood pressure as the only condition of health was involved and we have found no others. In *Schmidt* v. *Prudential Ins. Co. of America*, 190 Minn 239, 251 NW 683, the policy contained a provision similar to the one in the instant case and was issued without a medical examination. The insured had been treated for "shortness of breath" which was in reality caused by high blood pressure. It was held as a matter of law that the insured was not in fact in good health. The plaintiff was allowed to recover, however, because of a statute that provided in claims arising on a policy issued without medical

examination the statement as to age and physical condition shall be valid and binding upon the company unless wilfully false and intentionally misleading. It was held that the company could not circumvent the statute by inserting a condition making the policy void unless the insured was in sound health. We have no statute like that in this jurisdiction.

Here, under the pleadings and the grounds of the motion for a directed verdict we are not concerned with fraud or false answers in the application for the policy. We have seen, however, that the insured stated in the application that he had not been afflicted with high blood pressure or had not been treated by a physician within five years for any ailment or disease. Manifestly, from the evidence, he had had high blood pressure since he was 21 and knew it and had been treated for it by a physician within six months prior to the application.

The plaintiff relies upon the case of *Stanyan* v. *Security Mutual Life Ins. Co.*, 91 Vt 83, 86-87, 99 A 417, 418, LRA 1917C, 350. It is not in point here. There the reinstatement of a policy was in issue and the falsity of the answers in the application to have it reinstated were directly in question. It was held that a phrase in the application, "To the best of my knowledge and belief" modified the answers of the applicant.

The plaintiff also relies upon the case of *Metropolitan Life Ins. Co.* v. *Walters*, 215 Ky 379, 285 SW 256, 60 ALR 194. There the court mentioned earlier cases in that jurisdiction in which there had been an application and a medical examination and which held that the condition of sound health applied only to unsoundness of health arising after the application and examination and that when it is shown that the unsoundness of health did not occur between that time and the delivery of the policy, the company must rely upon the statements in the application to avoid a recovery, and not on the conditions in the policy. The court in the case then before it, extended that doctrine and made it apply when there was no medical examination. The answer to the plaintiff's claim in regard to that case is that the cases upon which it is founded are not the law in this jurisdiction. See *Powers* v. *North Eastern*

*Mutual Life Assoc.*, 50 Vt 630, 636 where this Court held that the applicant was bound by his statements in the application, whether true or false; that they were the basis of the contract and if they were false there was no contract of insurance. This holding was approved in *Schofield, Admx.* v. *Metropolitan Life Ins. Co.*, 79 Vt 161, 167. There was held that unqualified answers in a statement to the medical examiner were warranties and if false, rendered the policy void. See also 29 Am Jur Insurance, §564, p. 458, note 5.

■ Where the policy contains a provision or condition that the insured shall be in sound health, it is the fact of sound health of the insured which determines the liability of the insurer and not his apparent good health or his or anyone's opinion or belief that he was in sound health. *Pickens* v. *Security Benefit Assoc.*, 117 Kan 475, 231 P. 1016, 40 ALR 654; *Murphy* v. *Metropolitan Life Ins. Co.*, 106 Minn 112, 118 NW 355; *Commonwealth Life Ins. Co.* v. *Anglin*, 16 Tenn App 530, 16 SW2d 239.

In *Barker* v. *Metropolitan Life Ins. Co.*, 188 Mass 542, 74 NE 945, the policy contained a provision for sound health, at date of issue. It was held that the matter of sound health did not depend upon knowledge of the insured but upon the fact of health itself and that false answers have no application to the conditions contained in the policy itself but only to the negotiations for the policy.

In *Chorney* v. *Metropolitan Life Ins. Co.*, 54 RI 261, 172 A 392, 393, the policy contained a provision similar to the one in the instant case. There it appeared that the insured had within two years been treated by a physician for a serious disease and that prior to the issuance of the policy she had suffered from a disease of the heart and died of arteriosclerosis; hypertension. Recovery was limited to the premiums paid. The court saying, "There is a difference between a contract through a misrepresentation as to a fact and making the existence of the fact a condition upon which the contract, by its written terms, is dependent."

In *Karp* v. *Metropolitan Life Ins. Co.*, 86 NH 124, 164 A 219, the policy had a provision for sound health at date of issue.

The insured was afflicted with valvular heart trouble. It was held that the condition of sound health was not fulfilled and the insurer was entitled to a verdict as a matter of law. See also Anno., 100 ALR 362-375.

It is true that there are cases which hold that the question is for the jury. Of course, that question depends upon the evidence in each case. In the instant case, there can be. no question but that the insured had high blood pressure on the date of the issuance of the policy. He had known it for several years. He had been treated by one physician for it on two different occasions within six months prior to the date of the policy. He consulted another physician about it a few months after the policy was issued and was in the hospital because of it about that time. According to both physicians he was not in sound health on the date the policy was issued. None of this evidence was directly contradicted. It is true, there was evidence that he worked all the time and appeared to be in good health. But, as we have seen, appearance of good health is not sufficient.

There is no escape from the conclusion that, on the evidence, the insured was not in sound health on the date the policy was issued and that he had, within two years prior to that date, been treated by a physician for a serious disease and that such fact was not endorsed on the policy. It, therefore, follows that a motion for a directed verdict should be granted. *Spaulding, Admr.* v. *Mutual Life Ins. Co., supra,* 94 Vt 42, 55-57, 109 A 22; *Jacobs* v. *Loyal Protective Ins. Co., supra,* 97 Vt 516, 522; 124 A 848; *Wellman, Admr.* v. *Wales, supra,* 98 Vt 437, 447-448, 129 A 317.

The defendant admitted some liability by its tender into court of the premiums to be refunded in case the policy is void, plus interest and costs accrued to that date. Its motion for a directed verdict in its favor could not, strictly speaking, therefore, have been granted. Nor, for the same reason, could its motion to set aside the verdict and for judgment in its favor notwithstanding the verdict, have been granted. However, in that situation, it is proper to treat its motion for a directed verdict to be for such a verdict as the defendant

would be entitled to have under the circumstances. *Cummings v. Connecticut General Life Ins. Co.*, 101 Vt 73, 85, 142 A 82.

This Court in *Spaulding, Admr., et als* v. *Mutual, Life Insurance Co., supra,* 94 Vt 42, 45, 51, 109 A 22, had the same situation in regard to procedure before it. In that case, the liability on the policy was contested. The defendant tendered into court the amount of the premiums paid with interest thereon and the plaintiff's taxable costs, then accrued. The defendant made a motion for a directed verdict which was denied. The verdict and judgment were for the plaintiff for the full amount of the policy. This Court for the reasons stated in the opinion held that the policy was voidable. It sustained the defendant's exceptions to the overruling of its motion for a directed verdict. Judgment was rendered in this Court for the plaintiff for the amount of the tender. We will follow that procedure here.

The defendant's exceptions to the overruling of its motions to set aside the verdict and for a directed verdict are sustained. The plaintiff may have judgment for the sum conceded at the trial below by the defendant's tender. This disposition of the case makes it unnecessary to consider the defendant's exceptions to the charge of the court to the jury.

*Judgment reversed and judgment for the plaintiff to recover $56.15 without costs. Let the defendant recover its costs.*

### On Motion For Reargument

■ **Adams, J.** The purpose of a motion for reargument is to point out matters presented in the brief and relied upon in oral argument which it is thought were overlooked or misapprehended by this Court in reviewing the case. *Basso* v. *Veysey,* 118 Vt 399, 405, 110 A2d 706, *Horicon* v. *Langlois,* 115 Vt 81, 88, 52 A2d 888, and cases there cited.

The motion of the plaintiff claims, (2) that there was no evidence that there were no endorsements on the policy; (3) that she should not be deprived of the consideration of her exceptions because she did not file a bill of exceptions; (4) that the defendant did not prove its defense because the tender

made was not proper; (5) that her motion for a directed verdict raised issues that this Court has not decided and are determinative of the case; (6) that the admission of defendant's B, the photostatic copy of the policy, over the objection and exception of the plaintiff was error and that this evidence should not be considered in passing upon the defendant's motion for a directed verdict.

The trouble with the plaintiff's position is that, as pointed out in the opinion, she did not file her own bill of exceptions, signed by the presiding judged as required by statute. The matters covered by (2), no endorsement on the policy and (4), no proper tender, were grounds of the plaintiff's motion for a directed verdict which was overruled and exceptions allowed. That motion and (6), admission of the copy of the policy, defendant's B, were all mentioned in the opinion and it was there pointed out that the plaintiff should have filed her own bill of exceptions if she desired to have the benefit of them in this Court. She has advanced no reason in her motion or its accompanying brief that requires an alteration of the opinion in that particular. This disposes of grounds (2), (3), (4), and (5) of the motion. Ground (1) is introductory and needs no attention.

In connection with ground (6) of the motion, the plaintiff relies upon *Jones* v. *Gay's Express*, 110 Vt 531, 535, 9 A2d 121, wherein this Court held that inadmissible evidence, received under objection is not for consideration in passing upon a motion for a directed verdict. We recently approved this rule in *Lavigne* v. *Rossetti*, 118 Vt 456, 462, 114 A2d 407. The trouble with the plaintiff's position is two-fold. (1) We stated in the opinion that an examination of the record satisfied us that its admission was without error. We adhere to that statement. (2) The above cases are not in point. There the objection to the evidence was by the party who was before this Court on his own bill of exceptions. Here the plaintiff is not in this Court on her own bill of exceptions. As pointed out in the opinion her exceptions are a nullity. Her objection to the evidence does not, therefore, survive as it has nothing to support it.

*Motion for reargument denied. Let full entry go down.*