### 21668

UNITED INSURANCE COMPANY OF AMERICA, Appellant, v. Ronie (Ronia) STANLEY, individually, beneficiary, and as representative of heirs at law, Respondent.

(289 S. E. (2d) 407)

*Philip Wittenberg,* of *Levi & Wittenberg,* Sumter, *for appellant.*

*James P. Stevens, Sr.,* of *Stevens, Stevens & Thomas,* Loris, *for respondent.*

March 9, 1982.

HARWELL, Justice:

On October 6, 1975, respondent applied for a life insurance policy naming her husband as the insured and herself as the beneficiary. Appellant issued the policy on October 13, 1975. Appellant's agent collected the weekly premiums until the insured's death in January 1977. Appellant denied the respondent's request for the proceeds of the policy, tendered the amount of premiums to respondent, and then brought this action to have the policy declared void. Appellant alleged the policy was void *ab initio* because the insured was not of sound health at the time of application as required by the policy and because the respondent fraudulently procured the policy. At trial, appellant timely moved for a directed verdict and for judgment notwithstanding the verdict or alternatively for a new trial. The motions were denied, and appellant filed its appeal. We agree with appellant and reverse.

Appellant first alleges that the respondent fraudulently procured the insurance policy by misrepresenting the insured's health and by stating on the application that the insured had not been hospitalized or received medical attention within five years of the application. At trial respondent did not deny that the insured had been hospitalized or that he was taking medication when the application was made. However, she further testified that when she filled out the application, she did not think anything was wrong with her husband. In order to void an insurance policy for fraudulent procurement, the insurer must show not only that the statements complained of were untrue but also that the falsity was known to the applicant, material to the risk, relied on by the insurer, and made with the intent to deceive and defraud the company. *Atlantic Life Ins. Co. v. Beckham*, 240 S. C. 450, 126 S. E. (2d) 342 (1962); *Reese v. Woodmen of the World*, 221 S. C. 193, 69 S. E. (2d) 919 (1952). Therefore, respondent's intent was crucial to the issue of fraud. Ordinarily, a jury should decide the question of intent. *Phillips v. Life & Casualty Ins. Co.*, 226 S. C. 336, 85 S. E. (2d) 197 (1954). We conclude that the trial judge correctly submitted the question of fraud to the jury.

Appellant also alleges that when the policy was issued, the insured was not in sound health as required by the policy and, accordingly, it is not liable for the face amount of the policy but is liable merely for the premiums paid. The policy issued October 13, 1975 contains the following general condition:

POLICY TAKES EFFECT: No obligation is assumed by the Company prior to the Date of Issue of this Policy, nor unless on the said date the first payment has been made and the Insured is alive and in sound health. Should the proposed insured not be alive and in sound health on the said date any amount paid to the Company as premiums hereon shall be returned. This paragraph shall be subject to the paragraph captioned "Incontestability and Contract."

A provision that the policy shall not take effect unless on the date of its issuance the insured is in sound health is valid and enforceable, and is generally considered a condition precedent to the insurer's liability. *Ellis v. Capital Life & Health Ins. Co. of Columbia,* 229 S. C. 388, 93 S. E. (2d) 118 (1956). The actual and not merely the apparent health of the appellant at the time of the issuance of the policy is determinative of the rights of the parties under the "sound health" clause. *Ellis v. Capital Life & Health Ins. Co. of Columbia, supra; Crocker v. Life Ins. Co. of Virginia,* 183 S. C. 439, 191 S. E. 312 (1937); *Cooley v. Metropolitan Life Ins. Co.,* 153 S. C. 280, 150 S. E. 793 (1929). The term "sound health" means that the applicant has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. 183 S. C. at 441, 191 S. E. 312.

Dr. William H. Johnson, a general practitioner with 35 years of experience, offered the only testimony concerning the insured's health. Dr. Johnson's records revealed he had been treating the insured for cardiovascular disease since at least July 14, 1973, when he prescribed medication for hypertension. On October 3, 1973, the insured was hospitalized for medical tests. The tests revealed the insured had coronary artery disease and arteriosclerotic cardiovascular disease. According to Dr. Johnson, "He wasn't in physical, sound physical health" in October of 1973. The doctor prescribed nitroglycerin for his

angina in addition to other previously prescribed medications for hypertension.

On October 6, 1975, appellant's agent went to respondent's home where she filled out the application for insurance in the insured's absence. She testified that although she remembered the insured had been hospitalized two years earlier and was still taking medication, she did not think there was anything wrong with him on the date of the application. On October 13, 1975, after processing the application, the appellant issued its policy on the insured, a 66 year-old man, without conducting any investigation or requiring a physical examination. Dr. Johnson testified that in his opinion the insured was not in sound health on either October 6 or October 13 of 1975.

Subsequently, the insured was hospitalized in June 1976 for a duodenal ulcer and arteriosclerotic heart disease; however, Dr. Johnson stated that "anybody the age of 68 has arteriosclerosis." Dr. Johnson continued to treat the insured during July and November of 1976 for his heart condition. On January 22, 1977, the insured died of an apparent heart attack.

There is no contention as to the enforceability of the "sound health" provision in the life insurance policy. However, respondent contends that a jury issue was presented as to whether the isured was in sound health on the policy's insurance date. Appellant, on the other hand, alleges that the only evidence of the insured's health, the doctor's testimony, was that the insured was not of sound health on that date; therefore, a verdict for appellant should have been directed.

In this case the positive and uncontradicted testimony of Dr. Johnson shows beyond question that the insured was suffering from coronary artery disease and arteriosclerotic cardiovascular disease when the policy was issued. In Dr. Johnson's medical opinion, these are serious conditions which affect the general soundness and healthfulness of one's system. The only positive evidence that respondent offered was that she thought the insured was in sound health when she filled out the application. However, when an insurance company attacks a policy under the "sound health" provision, the issue is not of good or bad faith on the part of the insured,

but of whether or not he actually was in sound health when the policy was delivered. The evidence clearly and conclusively shows he was not in sound health. We conclude that the trial court erred in not directing a verdict for the appellant because the insured was not in sound health as required by the policy's terms.

Reversed.

LEWIS, C. J. and LITTLEJOHN, NESS and GREGORY, JJ., concur.