764 P.2d 1114

**LASMA CORP., an Arizona corporation; Lasma Arabians, Ltd., a limited partnership; William C. Zekan and Betty Zekan, husband and wife, Plaintiffs/Appellees/Cross-Appellants,**

v.

**The MONARCH INSURANCE COMPANY OF OHIO, an Ohio corporation; and Frelinghuysen Livestock Managers, Inc., Defendants/Appellants/Cross-Appellees.**

Nos. CV-87-0315-PR, 2 CA-CV 87-0093.

Court of Appeals of Arizona, Division 2, Department B.

May 12, 1987.

Lewis and Roca by Foster Robberson, Susan M. Freeman, Phoenix, for plaintiffs/appellees/cross-appellants Lasma.

Rawlins, Burrus, Lewkowitz & Feinstein, P.C. by R. Stewart Halstead, and Jeffrey S. Leonard, Phoenix, for plaintiffs/appellees/cross-appellants Zekan.

Fisher & Smith by H. Richmond Fisher, Phoenix, and Raggio, Jaffe & Kayser by H. Miles Jaffe, New York City, for defendants/appellants/cross-appellees.

## OPINION

LACAGNINA, Judge.

Monarch Insurance Company and its managing agent, Frelinghuysen Livestock Managers, Inc. (FLM), appeal from a jury verdict and judgment awarding William and Betty Zekan and Lasma Corporation compensatory and punitive damages, and from orders of the trial court denying motions for judgment n.o.v. and new trial.

The case arises from a claim made on an insurance policy insuring the life of a horse euthanized after the issuance of the policy. Monarch and FLM argue that the trial court improperly instructed the jury on the law in Arizona governing the meaning of a policy condition requiring "sound health" of the insured animal at the commencement of the policy. They also contend that the trial court should have granted their motions for directed verdict on the issue of bad faith and punitive damages and to set aside the award of punitive damages as excessive in relation to the net worth of Monarch and FLM.

Lasma and Zekans argue in their respective cross-appeals that the trial court wrongfully granted a directed verdict on their damage claims for economic interference and emotional distress as a consequence of the insurer's bad faith.

We reverse the judgments for compensatory and punitive damages and remand for new trial.

## FACTS

The relevant facts supporting our opinion are as follows. Zekans were the high bidders at a horse auction conducted by Lasma for the purchase of an Arabian mare, *Eroica, for $580,000, $116,000 payable at time of sale and the balance by execution of a five-year note to Lasma. At the drop of the gavel, Zekans purchased a binder on the life of the horse issued by an agent of FLM as agent for Monarch. Specific condition 1 of the policy provided:

> At the commencement of this insurance each animal hereby insured must be in sound health and free from any illness, disease, lameness, injury or physical disability whatsoever.

Evidence of *Eroica's health prior to and after the sale caused conflicting expert opinions regarding the existence, severity and relationship of any health problems as they existed 1) prior to and on the date of sale, February 6, 1983; 2) when application for insurance was made on February 17, 1983; 3) when surgery was performed on March 18, 1983, and March 20, 1983; and 4) on the day she was euthanized, April 12, 1983.

The trial court instructed the jury over objections by FLM and Monarch as follows:

The defendants claim that under Specific Condition 1 of the insurance policy they do not owe the insurance proceeds to the plaintiffs because *EROICA was not "in sound health and free from any illness, disease, lameness, injury, or physical disability, whatsoever" on February 6th, 1983.

Under Arizona law this policy condition was satisfied if, as of February 6th, 1983, the Zekans reasonably believed that *EROICA was in sound health. "Sound health," means having no grave, important or serious disease and being free from any ailment that seriously affects the general soundness and healthfulness of the system.

FLM and Monarch offered the following instruction, which was refused:

If you find that the Zekans did not withhold any material information in applying for insurance for *EROICA, you may then consider the Zekans' and Lasma's breach of contract claims.

The Zekans and Lasma have alleged that Monarch breached its contract of insurance with the Zekans when it refused to pay their claim for *EROICA. However, the contract required that *EROICA "must be in sound health and free from any illness, disease, lameness, injury or physical disability whatsoever" on February 6, 1983. "Sound health" means having no grave, important or serious disease and being free from any ailment that seriously affects the general soundness and healthfulness of the system. A horse is unsound from the moment symptoms of disease appear although it may be some time before the disease becomes fully developed.

If Monarch and Frelinghuysen prove by a preponderance of the evidence that *EROICA was not in sound health and free from any illness, disease, lameness, injury or physical disability whatsoever on February 6, 1983, then you must find in favor of Monarch and Frelinghuysen on all of plaintiffs' claims.

This case presents us with a novel problem created by an absence of sufficient precedent interpreting livestock life insurance. There is ample authority to assist an appellate court in deciding human life insurance disputes. Whether this body of law is authority supporting a decision involving animal life insurance is the problem confronting the court in this case. There are differences and similarities between human life insurance and animal life insurance. In *Samsill v. American Home Assurance Company*, 119 Ariz. 84, 579 P.2d 588 (App.1978), Division One of this court characterized a horse as personal property, and upheld an insurance policy provision limiting the time to sue on the policy because the destruction of the horse was loss of personal property, not governed by the void policy restrictions of A.R.S. § 20–1115. This is an example of one difference recognized by statute and the court's interpretation of the statute.

Zekans cite *Illinois Bankers' Life Assurance v. Theodore*, 44 Ariz. 160, 34 P.2d 423 (1934), in support of the court's instruction on their reasonable belief concerning *Eroica's sound health. This case and all others cited in the briefs in support of this proposition deal only with statements of opinion by applicants for human life insurance. These cases correctly state the law, which prohibits an insurance company from voiding coverage after the insured event occurs when the opinion of the applicant's health is erroneous because, at the time given, the applicant was suffering from some disease unknown or undetectable. Even though the cases all deal with human life, they are instructive as to the law governing statements of fact or opinion in all applications for insurance. They support the court's instructions to the jury on the statements made in the application for insurance prepared by Zekans after the sale on the issues raised by FLM and Monarch's counterclaim.

However, the cases cited are not authority when applied to a condition precedent in a policy which has been described as "fall of the gavel insurance." On February 6, 1983, Zekans were not owners of the horse until they became high bidders. They made no statements regarding the health of *Eroica before obtaining the binder.

They gave no opinion concerning the health of the horse upon which the binder was issued. Therefore, if the Zekans have no claim under the policy, it is not because of any statement they made or failed to make, or any action they took or failed to take on February 6, 1983. There is a difference between obtaining a contract through a misrepresentation of fact and making the existence of that fact a condition upon which the contract is dependent. *Chorney v. Metropolitan Life Ins. Co.*, 54 R.I. 261, 172 A. 392, 393 (1934), (industrial life insurance policy with no medical examination or representations as to health required). 45 C.J.S. *Insurance* § 595(f) at 412 (1945). Statutes relating to misstatements made in procuring a policy of life insurance have no application to a condition in the policy itself. *Chorney, supra.* Further, the avoidance of liability by the insurer due to nonfulfillment of any condition precedent "depends on the actual conditions, and not the knowledge of those conditions possessed by the parties." 45 C.J.S. *Insurance, supra. Metropolitan Life Ins. Co. v. Howle*, 62 Ohio St. 204, 56 N.E. 908 (1900); *Potter Title & Trust Co. v. Colonial Life Ins. Co. of America*, 114 Pa.Super. 436, 174 A. 587 (1934).

When a policy condition makes sound health a condition to liability, the liability is determined by the fact of the insured's sound health at the inception date of the policy and not by his apparent health or by his or anyone's belief or opinon that he was in sound health. *Burks v. Colonial Life & Accident Insurance Co.*, 98 F.Supp. 140 (M.D.Ga.1951), *aff'd*, 192 F.2d 643 (5th Cir. 1951), *cert. denied*, 343 U.S. 915, 72 S.Ct. 648, 96 L.Ed. 1330 (1952); *Hartford Live Stock Insurance Co. v. Phillips*, 150 Colo. 349, 372 P.2d 740 (1962); *United Insurance Co. of America v. Stanley*, 277 S.C. 463, 289 S.E.2d 407 (1982); *Crocker v. Life Ins. Co. of Virginia*, 183 S.C. 439, 191 S.E. 312 (1937); *American Nat. Ins. Co. v. Smith*, 18 Tenn.App. 222, 74 S.W.2d 1078 (1934); *Grover v. John Hancock Mutual Life Insurance Co.*, 119 Vt. 246, 125 A.2d 571 (1956); 44 C.J.S. *Insurance* § 237 (1965).

The conflicting expert testimony entitled FLM and Monarch to the jury instruction they offered, and Zekans' reasonable belief as to the health of *Eroica was immaterial. The instruction on *Eroica's soundness on February 6, 1983, should also apply to the breach of contract claim made by Lasma, the seller/loss payee. The instruction given by the trial court erroneously placed the entire decision relating to the existence of a contract, which Lasma and Zekans claim was breached, solely on a jury determination of Zekans' reasonable belief that *Eroica was sound and in good health. The trial court should instead have submitted to the jury the issue of *Eroica's actual health on February 6, 1983 [1].

We reject Zekans' and Lasma's argument that since the jury heard all of the conflicting evidence of *Eroica's health and decided in their favor on FLM's and Monarch's counterclaim for misrepresentation, the verdict should not be disturbed. As noted in this opinion, *Eroica's health on the date of sale is governed by the fact of actual good health, while the statements made in the application on February 17, 1983, are governed by good faith knowledge and compliance with the requirements for information specified by the insurer in its application as the test for voiding the policy. No appeal has been taken from the jury verdict and judgment in favor of Zekans and Lasma on the counterclaims; therefore, those issues are final.

## BAD FAITH CLAIM

FLM and Monarch's defense to the claim of bad faith was based on the fair debatability of *Eroica's actual health on February 6, 1983 (the date of the sale). If *Eroica's actual soundness was given to the jury for determination, it may have found that was a fairly debatable issue and therefore might have found in favor of the insurer on

---

1. FLM and Monarch specifically objected to the instruction given on the grounds that actual health was the test, and Zekans' belief of *Eroica's good health was immaterial. Our review of the correctness of an instruction is limited to the objections and argument made in the trial court; therefore, we reject Zekans' and Lasma's argument here that they should prevail because new arguments are raised by FLM and Monarch in their briefs. *Tucker v. Collar*, 79 Ariz. 141, 285 P.2d 178 (1955); *Travelers Indemnity Co. v. Hudson*, 15 Ariz.App. 371, 488 P.2d 1008 (1971).

this issue of bad faith, even if it found a contract and breach, thereby eliminating compensatory and punitive damages in addition to contract damages. As we view the erroneous instruction, it not only eliminated the issue of *Eroica's actual health from jury consideration, but also eliminated any fair debate of the health issue by the insurer, thereby in effect directing a verdict in favor of the insured on the issue of bad faith, as a result of nonpayment of the claim. Since the existence of a contract and its breach were the foundation for the claim of bad faith, the judgment for compensatory and punitive damages must be reversed and remanded for new trial.

### ISSUES ON RETRIAL

All other issues raised on appeal and cross-appeal not addressed in this opinion will necessarily be addressed by the trial court on retrial, and since the evidence may vary based on the trial court's view of admissibility, weight and credibility, no useful purpose would be served by commenting on those issues at this time. In addition, since this case was tried, the Arizona Supreme Court has authored more than one instructive opinion on the issue of punitive damages. *See, e.g., Filasky v. Preferred Risk Mutual Insurance Co.,* 152 Ariz. 591, 734 P.2d 76 (1987); *Gurule v. Illinois Mutual Life and Casualty Company,* 152 Ariz. 600, 734 P.2d 85 (1987); *Hawkins v. Allstate Insurance Co.,* 152 Ariz. 490, 733 P.2d 1073 (1987). The trial court and parties did not have the benefit of these recent cases and, therefore, rather than give an opinion on the weight of the evidence supporting bad faith and punitive damages in this case, we defer to the trial court on retrial for determination of these issues in light of the cases cited, together with this opinion on the law applicable to Specific Condition 1.

Reversed and remanded for new trial.

LIVERMORE, P.J., and HOWARD, J., concur.